# IN THE SUPREME COURT OF TEXAS

═══════════

No. 12-0744

═══════════

IN THE INTEREST OF E.C.R., CHILD

══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
══════════════════════════════════════════════════

**Argued April 23, 2013**

CHIEF JUSTICE JEFFERSON delivered the opinion of the Court

We require the State to overcome significant burdens before removing a child from his parent. These impediments are essential to protect the parent's fundamental liberty interest in the companionship, care, custody, and management of her children.[1] But "[j]ust as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).[2]

---

[1] *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981); *see In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) ("Parental rights are 'far more precious than any property right,' and when the State initiates a termination proceeding, 'it seeks not merely to infringe that fundamental liberty interest, but to end it.'") (quoting *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982)); *see also Holick v. Smith*, 685 S.W.2d 18, 21 (Tex. 1985) (noting that "involuntary termination statutes are strictly construed in favor of the parent").

[2] *See also* TEX. FAM. CODE § 153.001(a)(2) ("The public policy of this state is to . . . provide a safe, stable, and nonviolent environment for the child.").

The Family Code allows a court to terminate a parent's rights to her child if the child has been in the State's custody for at least nine months, and the State proves, by clear and convincing evidence, that the parent failed to comply with a court order that specified what she had to do to get her child back. TEX. FAM. CODE § 161.001(1)(O). The provision applies, however, only if the child was removed from the parent under Family Code Chapter 262 for "abuse or neglect of the child." *Id*. We must decide whether abuse or neglect includes placing the child's physical health or safety at substantial risk, as outlined below. Because we conclude that it does, and because the parent's abuse or neglect of another child is relevant to that determination, we reverse in part the court of appeals' judgment and remand the case to that court.

## I.    Background

After M.R. was seen punching and dragging her four-year-old daughter, Y.C., by her ponytail down the street, a witness called the authorities. M.R.'s eight-month-old son, E.C.R., was not present during this incident. The police found that Y.C. had fresh bruising on her face, dried blood inside her nose, cuts on her forehead and lips, and multiple scrapes. The police arrested M.R., who denied causing the injuries but later pleaded guilty to bodily injury to a child, a third-degree felony. The Department of Family and Protective Services received a referral of physical abuse of Y.C., who was sent to live with her father. After its investigation, the Department placed E.C.R., whose paternity was undetermined, with foster parents.

The Department took possession of E.C.R. under Family Code section 262.104, which authorizes possession without a court order if circumstances would lead a person of ordinary prudence and caution to believe that the child faced "an immediate danger to [his] physical health

2

or safety." TEX. FAM. CODE § 262.104. The next day, the Department filed a petition seeking conservatorship of E.C.R. and termination of M.R.'s parental rights. The petition was supported by a six-page affidavit recounting the circumstances necessitating E.C.R.'s removal. The affidavit described the allegations of physical abuse of Y.C. and also noted that M.R. had a prior CPS case involving physical abuse of an older son, who was in the permanent managing conservatorship of foster parents. M.R. told caseworker Cyntera Donatto that she had twice attempted suicide while spending three days in jail for the incident involving Y.C. After being released from jail, M.R. slept on the streets and left E.C.R. with her boyfriend at his home. M.R. told Donatto that the boyfriend physically abused her and was not stable. A criminal background check revealed that he had been arrested seven times over the past decade for theft, burglary, driving with an invalid license, and evading arrest. The day after she met with M.R., Donatto learned that M.R. had again been incarcerated.

Donatto observed E.C.R. and noted that, unlike Y.C., there were no evident signs that E.C.R. had been physically abused. He appeared clean, healthy, and developmentally on target. But his mother's history of abusing her other children, her fragile mental state, and her criminal case and incarceration persuaded Donatto that E.C.R. should not be left in M.R.'s care. Because E.C.R.'s paternity was unknown, the Department sought to be named his temporary managing conservator.

That day, the trial court found that E.C.R. had been removed pursuant to section 262.104 and that he faced a continuing danger to his physical health or safety if returned to M.R. The trial court also found that the nature of the emergency and the continuing danger to E.C.R.'s welfare made his

return to M.R. impossible or unreasonable. The court set the matter for a full adversary hearing within fourteen days.

After that hearing the trial court found sufficient evidence to satisfy a person of ordinary prudence and caution that:

> (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child; (2) the urgent need for protection required the immediate removal of the child and makes efforts to eliminate or prevent the child's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the child's removal and enable the child to return home, there is a substantial risk of a continuing danger if the child is returned home.

The court appointed the Department temporary managing conservator and ordered M.R. to comply with the service plan. *See* TEX. FAM. CODE §§ 263.101–.106. The court warned M.R. that her failure to do so could result in the termination of her parental rights. *See id*. §§ 161.001(1)(O), 263.106.

At a subsequent status hearing, the trial court signed additional temporary orders setting the conditions for E.C.R.'s return to M.R. M.R. had to complete a psychiatric examination and follow all recommendations; complete a psychological examination and follow all recommendations; participate in counseling, including individual, group, or family therapy sessions; complete parenting classes; complete random drug tests; remain drug free; refrain from engaging in criminal activity; maintain stable housing; maintain stable employment; successfully complete domestic violence and anger management classes; and complete all services outlined in the Family Service Plan. The court found that M.R. reviewed and understood the service plan and was advised that unless she was

4

willing and able to provide E.C.R. with a safe environment within the time specified in the plan, her parental rights could be terminated.

Almost a year later, the trial court held a termination hearing. M.R. gave limited testimony. She admitted being served with citation and receiving deferred adjudication for 0causing injury to a child, but she denied ever telling the caseworker that E.C.R. was not living in a safe environment. She provided the names of two men who might be E.C.R.'s father. She admitted having a prior CPS case that went to final orders, and that she no longer had custody of that child.

The Department representative testified that E.C.R. was removed because of the risk of physical abuse based on M.R.'s abuse of Y.C. The representative also stated that M.R. had completed some of the court-ordered requirements, but she had not satisfied the "big" ones. She failed to undergo a psychiatric evaluation or participate in psychotherapy. The Department also presented evidence that M.R. did not obtain employment, a violation of both the Family Service Plan and the conditions of her community supervision, and she had not lived in a home for six months.

The trial court terminated M.R.'s rights under subsection O of Family Code section 161.001(1), finding that such termination was in E.C.R.'s best interest. M.R. appealed, challenging the sufficiency of the evidence supporting termination under that subsection and the best interest finding. As to the former, her argument was straightforward. She did not dispute her failure to comply with the provisions of a court order that specifically established the actions necessary for E.C.R. to be returned to her and that E.C.R. had been in the Department's conservatorship for more than nine months. Instead, she argued that termination under subsection O was improper because

E.C.R. was removed because of *risk* of abuse based on her conduct toward his sibling, but not for actual abuse or neglect.

The court of appeals agreed, holding that M.R.'s abuse of Y.C. was not evidence that M.R. abused or neglected E.C.R. 390 S.W.3d 22, 27. Instead, "[f]or a trial court to terminate parental rights under section 161.001(1)(O), it must find that the child who is the subject of the suit was removed as a result of the abuse or neglect of that specific child." *Id.* The court noted that "the Family Service Plan and [the caseworker's] testimony both show that [the Department] became involved as a result of M.R.'s abuse of E.C.R.'s sibling, a factor that the court could not consider in reaching a finding under section 161.001(1)(O)." *Id.* at 28. The court reversed the portion of the trial court's judgment terminating M.R.'s parental rights and rendered judgment denying the Department's termination petition.[3] *Id.* at 30. A divided court voted against en banc reconsideration. *Id.* (Keyes, J., dissenting).

We granted the petition for review. 2013 Tex. LEXIS 112 (Feb. 15, 2013).

---

[3] The court of appeals refused to consider the Department's cross-points asserting alternative bases for termination. 390 S.W.3d at 29–30 (holding that "a parental rights termination order can be upheld only on grounds both pleaded by [the Department] and found by the trial court") (quoting *Vasquez v. Texas Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 194 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). *But see id.* at 47 (Keyes, J., dissenting) (stating that "predicate acts under section 161.001(1) raised by [the Department] and supported by the evidence, but not expressly found by the trial court" should be considered by appellate court). The Department contends this was error. Because we hold that the Department conclusively proved grounds for termination under subsection O, we do not reach this issue.

6

**II.    The Department proved grounds for termination under subsection 161.001(1)(O) as a matter of law.**

Family Code section 161.001(1) identifies multiple grounds for involuntarily terminating parental rights. Subsection O authorizes termination if the court finds, by clear and convincing evidence, that a parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE § 161.001(1)(O).

We last considered subsection O in *In re J.F.C.*, 96 S.W.3d 256, 277 (Tex. 2002), an appeal of a judgment terminating the parents' right to their three children. In that case, the Department received a referral alleging that the father had sexually abused two of the children, but the ensuing investigation revealed no evidence of abuse. *In re J.F.C.*, 57 S.W.3d 66, 68 (Tex. App.—Waco 2001), *rev'd*, 96 S.W.3d 256 (Tex. 2002). A year later, the Department received information that the parents "had drug problems, were physically abusive to one another, and may have been physically abusing the children." *Id*. The Department investigated and found bruises on one of the children, as well as corroboration of drug use in the home. *Id*. The Department did not remove the children, because it concluded they were not in immediate danger. *Id*. In weekly home visits over the next seven months, the Department found no evidence of abuse. *Id*. The Department learned, however, that the parents were not participating in their required counseling and continued to have conflicts among themselves. *Id*. Subsequently, the Department received a report that the mother had

7

handled one of the children roughly; the Department confirmed that the child (the same one who had bruises previously) had marks and scratches on his body. *Id*. The Department found that the parents' emotional health was deteriorating, and the children were not attending daycare. *Id*. The parents continued to fight and faced substantial marital problems and financial hardships. *Id*. The Department removed the children from the home and sued for temporary conservatorship. *Id*. The trial court approved a Family Service Plan outlining the requirements the parents had to satisfy to avoid termination of their rights. *Id*. at 68-69. Primarily because the parents failed to comply with the Plan, the Department amended its petition to seek termination. *Id*. at 69.

The trial court terminated the parents' rights. *Id*. at 70. A divided court of appeals reversed after determining that the charge permitted the jury to find that the parents' rights should be terminated without finding that termination would be in the children's best interest. *J.F.C.*, 96 S.W.3d at 260. In this Court, the parents argued, among other things, that the charge failed to require that the same ten jurors agree on the specific grounds for termination. *Id*. at 277. Because the question included more than one course of parental conduct justifying termination, they argued that their rights may have been terminated even though fewer than ten jurors agreed on the basis for termination. *Id*.

We held that even assuming the submission was improper, any error was harmless, because the Department had conclusively proved that the parents rights should be terminated under subsection O:

> It is undisputed that both parents failed to comply with numerous, material provisions of court orders that specifically required their compliance to avoid restriction or termination of their parental rights.

. . . .

> The evidence establishes as a matter of law that the parents failed to comply with the court's orders specifying the actions the parents had to take for the [Department] to return the children to the parents. The record also conclusively establishes that the children were removed from their parents under Chapter 262 of the Family Code, and it is undisputed that they were in the [Department's] custody for more than nine months after their removal. Accordingly, the parental conduct described in subsection 161.001(1)(O) of the Family Code was established as a matter of law. Any error in failing to submit a specific instruction on juror agreement regarding parental conduct was thus harmless.

*Id.* at 277-79. We reversed the court of appeals' judgment and rendered judgment terminating the parents' rights. *Id*. at 285.

At least one appellate court has interpreted subsection O in a similar fashion, holding that termination was warranted upon proof of "immediate danger to the physical health or safety of the child"—the emergency removal standard under chapter 262. *In re M.L.J.*, No. 02-07-0178-CV, 2008 Tex. App. LEXIS 3218, at *14-15 (Tex. App.— Fort Worth May 1, 2008, pet. denied) (mem. op.); *see also* TEX. FAM. CODE §§ 262.101–.102, .104(a)(1)–(2). In *M.L.J.*, the parents argued—as M.R. does here—that subsection O was inapplicable because their child was not removed for actual abuse or neglect, but only because of the risk of abuse or neglect. The court of appeals rejected this contention. *See M.L.J.*, 2008 Tex. App. LEXIS 3218, at *14-18. The Department's investigator testified that the child was removed from the parents, who were both intellectually disabled, not just because of the parents' "lack of skills" but also because they refused to seek help caring for their child. *Id*. at *16. A psychologist corroborated his testimony, stating that the mother had reported that the father had once punched her and once shook one of the children. *Id*. at *17. The

9

psychologist also noted that the mother had difficulty accepting that she needed help caring for her children, and that a small child faced a high degree of risk if left in the parents' care. *Id.* at \*17–18.

The court of appeals held that the investigator's testimony "'would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of [the child].'" *Id.* at \*18 (quoting TEX. FAM. CODE § 262.104(a)(1)–(2)). The court concluded that the evidence supported termination under subsection O. *Id.*; *see also In re D.R.J.*, 395 S.W.3d 316, 324 (Tex. App.—Fort Worth Feb. 7, 2013, no pet.) (Gardner, J., concurring) ("This court has previously held that evidence was sufficient to establish removal for 'abuse or neglect' based upon a CPS investigator's personal knowledge of facts that would lead a person of ordinary prudence to believe that there is 'an immediate danger to the physical health or safety of the child' as required for removal without a court order under family code section 262.104(a)(1), (2).") (citing *In re M.L.J.*).

Conversely, other courts have held that removal due to risk of abuse or neglect does not satisfy O's requirements. *See, e.g.*, *In re C.B.*, 376 S.W.3d 244, 252 (Tex. App.—Amarillo 2012, no pet.); *Mann v. Dep't of Family and Protective Servs.*, No. 01-08-01004-CV, 2009 Tex. App. LEXIS 7326, at \*20-21 (Tex. App.—Houston [1st Dist.] Sept. 17, 2009, no pet.) (mem. op.); *In re S.A.P.*, 169 S.W.3d 685, 706–07 (Tex. App.—Waco 2005, no pet.) (holding that father's rights could not be terminated under subsection O because child was removed due only to risk of abuse based on parents' prior history).

In *C.B.*, the court of appeals considered a case involving a mother who "admitted to recent and chronic methamphetamine use" and who was involved in, and exposed C.B. to, an abusive

relationship with her boyfriend, also a methamphetamine user who kept the drug in a bedside cabinet in their shared home. *C.B.*, 376 S.W.3d at 251. The boyfriend had threatened the mother's life and repeatedly abused her in C.B.'s presence. *Id*. at 251-52. Nonetheless, the court held that termination under subsection O was not proper because although "[t]he affidavit portrays a volatile home environment and behavior by the mother and her paramour capable of resulting in abuse or neglect of a two-year-old child, . . . § 161.001(1)(O) requires actual occurrence of abuse or neglect to justify termination of parental rights." *Id*. at 252. Even applying the definitions of abuse and neglect in a related chapter, the court concluded that subsection O's standard had not been satisfied. *Id*. at 250. "Abuse" under chapter 261 includes a parent's current use of a controlled substance,[4] yet the court found no evidence that the mother's methamphetamine use caused physical, mental, or emotional harm to C.B., a statutory requirement. *Id*. Nor had C.B. been the victim of neglect: "[A] pattern of violence directed toward the mother by her paramour would carry some risk that a two-year-old child in the home may suffer harm, but this record does not support a conclusion that C.B. was subjected to 'a substantial risk of immediate harm.'" *Id*. (quoting TEX. FAM. CODE § 261.001(4)(B)(i)). The court held that the trial court's temporary orders were not relevant, because while they justified initial and continued removal of C.B., they contained "no findings that C.B. was actually abused or neglected." *Id*. at 250–51.

In *Mann*, the Department removed a days-old baby from his mother due to a risk of physical abuse, based on the mother's abuse of a sibling. *Mann*, 2009 Tex. App. LEXIS 7326, at *1–2. The

---

[4] *See* TEX. FAM. CODE § 261.001(1)(I).

11

mother failed to complete the necessary court-ordered services, and the trial court terminated her rights under subsection O. *Id*. at *3–11. The court of appeals reversed, holding that there was no evidence that the child had actually been abused or neglected. *Id*. at *16–17. Risk was not enough; the mother's abusive conduct toward a sibling "do[es] not provide evidence that [the mother] abused or neglected [the removed child]." *Id*. at *20. Thus, the court held that the evidence was legally insufficient to support termination under subsection O. *Id*. at *20-21.

In this case, the same court of appeals applied *Mann* to reach the same conclusion. 390 S.W.3d at 27 (holding that "M.R.'s abuse of Y.C. cannot be considered evidence that M.R. abused or neglected E.C.R. under section 161.001(1)(O)"). The court disregarded the trial court's temporary orders finding "'danger to [E.C.R.'s] physical health or safety'" and "'a substantial risk of a continuing danger if the child is returned home,'" because they were based on the risk of abuse, rather than "specific allegations of neglect or abuse" of E.C.R. *Id*. at 27–29.

We agree that subsection O requires proof of abuse or neglect,[5] but we disagree that those terms can never be read to include risk. We consider their use and meaning in context of the Family Code removal provisions and the Legislature's definitions of "abuse" and "neglect" in related chapters.

---

[5] *See, e.g.*, *In re A.A.A.*, 265 S.W.3d 507, 515 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding that subsection O requires proof of abuse or neglect, which should be determined on a case-by-case basis); *see also D.F. v. Tex. Dep't of Family & Protective Servs.*, 393 S.W.3d 821, 828 (Tex. App.—El Paso 2012, no pet.) (concluding that subsection O requires proof of abuse or neglect); *In re M.N.*, No. 11-10-00129-CV, 2011 Tex. App. LEXIS 1924, at *9 (Tex. App.—Eastland Mar. 17, 2011, no pet.)(mem. op.) (same); *In re S.N.*, 287 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (same); *In re M.L.J.*, No. 2-07-178-CV, 2008 Tex. App. LEXIS 3218, at *14 (Tex. App.—Fort Worth May 1, 2008, pet denied) (mem. op.) (same); *In re S.A.P.*, 169 S.W.3d 685, 705-06 (Tex. App.—Waco 2005, no pet.) (same); *In re M.B.*, No. 07-04-0334-CV, 2004 Tex. App. LEXIS 11209, at *7 (Tex. App.—Amarillo Dec. 14, 2004, no pet.)(mem. op.) (same).

The preceding chapter, titled "Investigation of Report of Child Abuse or Neglect," requires that "abuse" and "neglect" be reported to the authorities, and the failure to do so carries criminal penalties. TEX. FAM. CODE §§ 261.101(a), .103(a), .109. The terms are defined broadly and nonexclusively,[6] but only "[i]n this chapter." *Id*. § 261.001, (1), (4). Both definitions give examples of abusive or neglectful conduct, and both definitions explicitly include risk: abuse includes not just actual physical injury, but a "genuine threat of substantial harm from physical injury"; neglect includes placing a child in or failing to remove a child from a situation that requires actions or judgment beyond his capabilities and that results in "a substantial risk of immediate harm to the child" or a situation in which the child would be exposed to "a substantial risk of sexual conduct harmful to the child." *Id*. § 261.001(1)(C), (4)(B)(i), (4)(B)(iv). Both definitions also include language that permits the consideration of harm to another child in determining whether abuse or neglect has occurred. *See, e.g.*, *id*. § 261.001(1)(C) ("genuine threat of substantial harm"), (4)(B)(v) ("neglect" includes exposing a child to situations in which another child faces certain sexual crimes, like abuse and trafficking).

Once the Department receives a report of abuse or neglect, it must promptly and thoroughly investigate. *Id*. § 261.301(a). If the Department believes that the child's immediate removal is

---

[6] *See* TEX. GOV'T CODE § 311.005(13) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."); *Tex. West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179 (Tex. 2012) (holding that Legislature's use of the term "including" meant that statutory definition was nonexclusive); *see also Samantar v. Yousuf*, 130 S.Ct. 2278, 2287 (2010) (observing that "use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive") (citing 2A N. SINGER & J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.7, p. 305 (7th ed.2007) ("[T]he word 'includes' is usually a term of enlargement, and not of limitation" (some internal quotation marks omitted)); *Fed. Land Bank v. Bismarck Lumber Co.*, 314 U.S. 95, 99–100 (1941) (holding that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle").

necessary to avoid further abuse or neglect, it must file a petition or take other action under chapter 262 for the child's temporary care and protection. *Id*. § 261.302(d).

Chapter 262, titled "Procedures in Suit by Governmental Entity to Protect Health and Safety of Child," details the circumstances under which a governmental entity may file a suit affecting the parent-child relationship or take possession of a child without a court order. *Id*. § 262.001(a). The statute provides that "[i]n determining the reasonable efforts that are required to be made with respect to preventing or eliminating the need to remove a child from the child's home or to make it possible to return a child to the child's home, the child's health and safety is the paramount concern." *Id*. § 262.001(b). The Department, a law enforcement officer, or a juvenile probation officer may take possession of a child without a temporary restraining order if the child faces an immediate danger to his physical health or safety; has been a victim of sexual abuse; is in the possession of someone who is using a controlled substance, if it poses an immediate danger to the child's physical health or safety; or is in the possession of someone who has permitted him to remain on premises used for methamphetamine manufacture. *Id*. § 262.104(a)–(b). If the Department petitions for possession of a child without prior notice and a hearing, it must submit an affidavit stating, among other things, "facts sufficient to satisfy a person of ordinary prudence and caution" that the child faces an immediate danger to his health or safety, or that the child has been a victim of neglect or sexual abuse, and that continuation in the home would be contrary to the child's welfare. *Id*. § 262.101. The trial court may issue a temporary restraining order only if it finds that one of those conditions has been satisfied.

Within fourteen days after the Department has taken possession of the child, the trial court must hold a full adversary hearing. *Id*. § 262.201(a). Following the hearing, the trial court must order the child returned to his parent unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that: there was a danger to the child's physical health or safety that was caused by an act or failure to act of the person entitled to possession, and for the child to remain in the home is contrary to his welfare; the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the child's safety, were made to eliminate or prevent the child's removal; and reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home. *Id*. § 262.201(b). Continued removal is warranted only if the child faces a continuing danger to his physical health or safety. *Id*. § 262.201(b)–(c).

The standard used repeatedly throughout chapter 262 is "danger to the physical health or safety of the child." That phrase is also centered on risk, rather than just a history of actual abuse or neglect: the Legislature has defined it to include "exposure of the child to loss or injury that jeopardizes the physical health or safety of the child without regard to whether there has been an actual prior injury to the child." *Id*. § 101.009; *see also id*. § 101.001(a) ("Definitions in this subchapter apply to this title."). In determining whether the child faces a continuing danger to his physical health or safety, at each stage of the proceedings the court may consider whether the child's household includes a person who has: "(1) abused or neglected another child in a manner that caused serious injury to or the death of the other child; or (2) sexually abused another child." *Id*.

15

§§ 262.102(b) (temporary restraining order), 262.107(b) (initial hearing), 262.201(d) (full adversary hearing).

Although chapter 261's "abuse" and "neglect" definitions do not govern in chapter 262, they surely inform the terms' meanings. *See, e.g.*, *Brown v. Darden*, 50 S.W.2d 261, 263 (Tex. 1932) ("Whenever a legislature has used a word in a statute in one sense and with one meaning, and subsequently uses the same word in legislating on the same subject-matter, it will be understood as using it in the same sense, unless there be something in the context or the nature of things to indicate that it intended a different meaning thereby."). So while subsection O requires removal under chapter 262 for abuse or neglect, those words are used broadly. Consistent with chapter 262's removal standards, "abuse or neglect of the child" necessarily includes the risks or threats of the environment in which the child is placed. Part of that calculus includes the harm suffered or the danger faced by other children under the parent's care. If a parent has neglected, sexually abused, or otherwise endangered her child's physical health or safety, such that initial and continued removal are appropriate, the child has been "remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child." *See* TEX. FAM. CODE §§ 161.001(1)(O), 262.101, .102, .104, .107, .201.[7]

Here, the Department's evidence in support of removal included an affidavit showing that the department received a referral of physical abuse of Y.C. A witness had seen M.R. punching Y.C.

_____

[7] *Cf.* TEX. FAM. CODE § 161.001(1)(E) (authorizing termination if parent engages in conduct that "endangers the physical or emotional well-being of *the child*") (emphasis added); *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (holding that "the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage"); *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (holding that conduct that "'endangers . . . the child'" did not require that actions "be directed at the child or that the child actually suffers injury") (quoting former TEX. FAM. CODE § 15.02(1)(E)).

and dragging her by her hair. Y.C. had sustained injuries. M.R. denied the abuse, but she was arrested and charged with intentional bodily injury to a child. She had been involved in a prior CPS case involving physical abuse of her older son, who was in the foster parents' permanent conservatorship. She left E.C.R. with her boyfriend, who was not E.C.R.'s father, had an extensive criminal history, and had physically abused her. She was incarcerated and unable to care for E.C.R. This affidavit, even if not evidence for all purposes, shows what the trial court relied on in determining whether removal was justified. That court found sufficient evidence to satisfy a person of ordinary prudence and caution that E.C.R. faced an immediate danger to his physical health or safety, that the urgent need to protect him required his immediate removal, and that he faced a substantial risk of a continuing danger if he were returned home—findings unchallenged by M.R.[8] This evidence and these findings establish that E.C.R. was removed from M.R. under chapter 262 for abuse or neglect. *See, e.g.*, *In re J.S.G.*, No. 14-08-00754-CV, 2009 Tex. App. LEXIS 3224, at *18-20 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (mem. op.) (relying on caseworker's affidavit in support of the Department's removal request, as well as trial court's temporary orders concluding that the children faced a danger to their physical health or safety and a substantial risk

---

[8] *See, e.g.*, *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (holding that mandamus relief was appropriate because trial court's temporary orders were not subject to interlocutory appeal); *In re Steed*, No. 03-08-00235-CV, 2008 Tex. App. LEXIS 3652, at *2 n.3 (Tex. App.—Austin May 22, 2008, orig. proceeding) ("Because temporary orders in a suit affecting a parent-child relationship are not subject to interlocutory appeal under the family code, mandamus review is appropriate."), *mand. denied*, 255 S.W.3d 613, 615 (Tex. 2008, orig. proceeding) ("[W]e are not inclined to disturb the court of appeals' decision."). *But see* TEX. FAM. CODE § 262.112(b) ("In any proceeding in which an expedited hearing is held under Subsection (a), the department, parent, guardian, or other party to the proceeding is entitled to an expedited appeal on a ruling by a court that the child *may not* be removed from the child's home.") (emphasis added).

of a continuing danger if returned home, to conclude that the evidence established that the children were removed "as a result of neglect specific to them by" the mother); *see also D.F. v. Tex. Dep't of Family & Protective Servs.*, 393 S.W.3d 821, 830-31 (Tex. App.—El Paso 2012, no pet.) (noting that trial court's finding of immediate danger to child's physical health or safety or that they were neglected or abused supported finding of neglect); *In re S.N.*, 287 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that affidavit, family service plan, and temporary orders showing danger to physical health or safety and "'substantial risk of continuing danger'" supported finding that children were removed under chapter 262 for neglect); *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (considering affidavit in support of removal and trial court's temporary orders finding "'continuing danger to the physical health or safety of the child if returned to the parent'" as evidence that child was removed because of neglect).

M.R. does not dispute that she "failed to comply with numerous, material provisions of court orders that specifically required . . . compliance to avoid restriction or termination of parental rights." *J.F.C.*, 96 S.W.3d at 277. As in *J.F.C.*, the record conclusively establishes that E.C.R. was removed from M.R. under Chapter 262 of the Family Code for abuse or neglect, and it is undisputed that he was in the Department's custody for more than nine months after his removal. The parental conduct described in subsection 161.001(1)(O) of the Family Code was thus established as a matter of law.

### III. A reasonable factfinder could have formed a firm belief or conviction that termination was in E.C.R's best interest.

M.R. also challenges the sufficiency of the evidence supporting the best interest finding. In reviewing this finding, we consider, among other evidence, the *Holley*[9] factors. *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012). Many of the reasons supporting termination under subsection O also support the trial court's best interest finding. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding that same evidence may be probative of both section 161.001(1) grounds and best interest). M.R. pleaded guilty to causing injury to a child, a third degree felony. She twice attempted suicide while incarcerated on that charge, and there was evidence that she was mentally unstable. She no longer has custody of any of her four children. Her oldest was taken into Department custody several years earlier after a referral of physical abuse, and the trial court terminated her parental rights. E.C.R. lives in the same foster home with M.R.'s youngest child, a baby who was born after E.C.R. was taken into custody. M.R. has a history of homelessness, and at the time of the hearing, she had not lived in a home for six months. She has not been employed at any time since E.C.R. was taken into custody, jeopardizing her parental rights and violating the conditions of her community supervision. Although she told the child advocate she was unable to work due to pregnancy, she was unable to provide documentation substantiating that claim, nor did she explain her inability to work at all during the fourteen months the case was pending. When E.C.R. came into care, he was behind on

---

[9] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

19

his immunizations. He has done "very well" in foster care, and his foster parents are meeting his physical and emotional needs. The Department's long term goal for E.C.R. is unrelated adoption, although there was no evidence that his foster family would, or would not, adopt him. *C.H.*, 89 S.W.3d at 28 ("Evidence about placement plans and adoption are, of course, relevant to best interest."). But "the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *Id*. Rather, we examine the entire record to decide best interest, "even if the agency is unable to identify with precision the child's future home environment." *Id*. We conclude that there is evidence from which a fact-finder could have formed a firm belief or conviction that termination of M.R.'s parental rights was in E.C.R.'s best interest.

M.R. also challenged the factual sufficiency of the evidence supporting the best interest finding, a question that the court of appeals must decide. *See* TEX. CONST. art. V, § 6(a). We remand to that court for consideration of the issue.

## IV. Conclusion

We reverse in part the court of appeals' judgment and remand to that court for further proceedings. TEX. R. APP. P. 60.2(d).

_____
Wallace B. Jefferson
Chief Justice

OPINION DELIVERED: June 14, 2013

20