**Affirmed and Memorandum Opinion filed December 10, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00640-CV

## IN THE INTEREST OF R.E.T.R AND D.D.R, JR., CHILDREN

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-04492J**

## M E M O R A N D U M   O P I N I O N

Appellant, C.J., appeals from the trial court's judgment terminating her parental rights to her two children. In two issues, appellant challenges the sufficiency of the evidence to support the trial court's predicate termination findings, and she asserts that she received ineffective assistance of counsel. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant's daughter, R.E.T.R., was born January 9, 2011. D.D.R., Jr., appellant's son, was born July 8, 2012. On July 9, 2012, the Texas Department of

Family and Protective Services received two referrals concerning the children. The first referral alleged appellant physically abused D.D.R., Jr. because appellant tested positive for cocaine and marijuana when he was born. *See* Tex. Fam. Code § 261.001(1)(I) (defining "abuse" as including a parent's current use of a controlled substance). In addition, the referral alleged the baby's urine tested positive for drugs at birth. The second referral alleged neglectful supervision of the older child, R.E.T.R.

On July 23, 2012, the Department filed a petition for protection of the children, and appellant and the children's alleged father, D.D.R., were personally served.[1] The trial court entered emergency temporary orders and scheduled an adversary hearing. Appellant and the alleged father submitted to drug testing, and both tested positive for cocaine. After the adversary hearing, the court appointed the Department temporary managing conservator of the children, signed further temporary orders, and made findings, including a finding of:

> sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a danger to the physical health or safety of the children which was caused by an act or failure to act of the person entitled to possession and for the children to remain in the home is contrary to the welfare of the children; (2) the urgent need for protection required the immediate removal of the children and makes efforts to eliminate or prevent the children's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the children's removal and enable the children to return home, there is a substantial risk of a continuing danger if the children

---

[1] The Department also requested adjudication of the father's parentage and termination of his parental rights, both of which the trial court granted. The father has separately appealed the termination decree. *See In re R.E.T.R. & D.D.R., Jr.,* No. 14-13-00698-CV (Tex. App.—Houston [14th Dist.]). The father's appointed counsel filed a brief concluding the appeal is wholly frivolous and without merit, pursuant to *Anders v. California,* 396 U.S. 738, 77 S.Ct. 1396 (1967). *See In re D.E.S.*, 135 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (applying *Anders* procedures to termination cases). Therefore, we will not address issues concerning the father's termination in this appeal.

2

are returned home.

On September 25, 2012, the trial court signed a Status Hearing Order, adopting and approving the statutorily required family service plan for appellant to regain custody of the children. *See* Tex. Fam. Code §§ 263.101–.106. The court's order expressly advised appellant that her progress under the service plan would be reviewed at all subsequent hearings. The order also included the following express admonition:

> THIS COURT ADVISES THAT THE FAMILY SERVICE PLANS, APPROVED AND INCORPORATED BY THIS ORDER AS SET FORTH ABOVE, SPECIFICALLY ESTABLISH THE ACTIONS NECESSARY FOR THE PARENTS TO OBTAIN RETURN OF THE CHILDREN WHO ARE IN THE TEMPORARY MANAGING CONSERVATORSHIP OF THE DEPARTMENT, AND THIS COURT FURTHER ADVISES THE PARENTS THAT FAILURE TO COMPLY MAY RESULT IN THE RESTRICTION OR TERMINATION OF HIS OR HER PARENTAL RIGHTS.

The court also signed a separate order that the parents were required to "[r]emain drug free," "[r]efrain from engaging in criminal activity," maintain stable housing and stable employment, and "[c]omplete all services" in the court-approved family service plan.

After a bench trial almost a year after the proceedings were initiated, the court found by clear and convincing evidence that termination of appellant's parental rights is in the best interest of both children. The court also found clear and convincing evidence that appellant engaged in the following conduct as grounds for termination, as set out in its decree of termination signed July 16, 2013:

> 1. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to § 161.001(1)(D), Texas Family Code;

3

2. engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to § 161.001(1)(E), Texas Family Code;

3. constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and: (1) the department or authorized agency has made reasonable efforts to return the children to the mother; (2) the mother has not regularly visited or maintained significant contact with the children; and (3) the mother has demonstrated an inability to provide the children with a safe environment, pursuant to § 161.001(1)(N), Texas Family Code;

4. failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(1)(O), Texas Family Code;

5. used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the children, and: (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance, pursuant to § 161.001(1)(P), Texas Family Code; and

6. been the cause of the children being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by § 261.001(7), Texas Family Code pursuant to § 161.001(1)(R), Texas Family Code.

*See* Tex. Fam. Code § 161.001(1)(D), (E), (N), (O), (P), & (R).

Appellant filed a timely motion for new trial, which was overruled by operation of law, and a timely notice of appeal. Appellant raises two issues in this appeal, challenging the sufficiency of the evidence and the effectiveness of her counsel's representation. We first address appellant's challenge to the sufficiency

4

of the evidence supporting termination of her parental rights.

## II. LEGAL AND FACTUAL SUFFICIENCY CHALLENGE

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Due to the severity and permanency of the termination of parental rights, the burden of proof at trial is heightened to the clear and convincing standard. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

When determining legal sufficiency, we review "all the evidence in the light most favorable to the court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* However, this does not mean that we must disregard all evidence that does not support the finding. *Id.* Because of the heightened standard, we must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

When reviewing a factual sufficiency challenge under the clear and

convincing burden, the analysis is somewhat different in that we must consider all of the evidence equally, both disputed and undisputed. *Id.* We must consider whether the evidence is sufficient to produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegation sought to be established. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish, by clear and convincing evidence, one or more acts or omissions enumerated under subsection (1) of section 161.001 and that termination is in the best interest of the child under subsection (2). Tex. Fam. Code § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). We need only determine if the evidence is legally and factually sufficient to support a single ground for termination and the trial court's finding that the termination is in the best interest of the children. *See* Tex. Fam. Code § 161.001; *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re A.L.,* 389 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Thus, we need not address all of the grounds for termination alleged in the Department's petition and found by the trial court. While the Department was required to establish only a single ground listed in subsection (1) of section 161.001, we will address both endangerment and failure to comply with the court-ordered family service plan.

## A. ENDANGERING CONDUCT

Subsection (E) of section 161.001 permits termination of parental rights when the parent has either personally engaged in conduct that endangers the child or knowingly placed the child with another person who engaged in dangerous conduct. Tex. Fam. Code § 161.001(1)(E). As used in this statute, "endanger" means to "expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* (quoting *Boyd*, 727 S.W.2d at 533). Rather, it is sufficient if the parent's conduct endangers the emotional well-being of the child. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In considering endangerment, courts may look to parental conduct both before and after the child's birth. *In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

The Department is required to prove that the parent engaged in a "voluntary, deliberate, and conscious course of conduct" that endangers the child. *See Ruiz v. Tex. Dep't of Family and Protective Servs.*, 212 S.W.3d 804, 815 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Conduct that subjects a child to a life of uncertainty and instability also endangers the physical and emotional well-being of a child. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). In considering whether a relevant course of conduct has been established, a court properly may consider evidence establishing that a parent continued to engage in endangering conduct after the child's removal by the Department or after the child no longer was in the parent's care. *Id.*

Endangerment under subsection (E) may include evidence of drug use and its effect on a parent's life and ability to perform the duties of a parent. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("It necessarily follows that the endangering conduct may include . . . evidence of drug usage."); *see also In re U.P.*, 105 S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

The Department's caseworker testified at trial. Both the mother and the younger child, D.D.R., Jr., tested positive for cocaine when he was born prematurely. At that time, appellant admitted to using cocaine and marijuana two to three times per month. Appellant claimed she had been unaware she was pregnant until she went into labor. Appellant continued to test positive for marijuana and cocaine during the pendency of the case. Despite testimony that appellant was eight months pregnant at the time of trial, appellant had tested positive for cocaine three months earlier. The results from appellant's drug tests were admitted into evidence.[2]

Appellant argues that even though the younger child testified positive for drugs at birth, there is no evidence to show appellant engaged in voluntary, deliberate or conscious conduct. Appellant testified that the last time she used drugs was when the younger child was born. Appellant acknowledged that the hair follicle tests were positive for cocaine, but she contended that these positive tests were due to "residue" from prior use. The April 2013 positive test showed the level of cocaine had increased since the January 2013 test, however.[3]

The caseworker testified that the mother obtained no prenatal care during her pregnancy with the younger child and that, during the pendency of this case, the

---

[2] The reports reflect that on July 23, 2012, appellant tested positive for cocaine and marijuana, and on January 17, 2013, and April 18, 2013, she tested positive for cocaine.

[3] The cocaine measured 1040 pg/mg [picograms per milligram] on April 18, 2013, when it had been 969 pg/mg on January 17, 2013.

police were called when the mother and father got into a fight at their home. Domestic violence may be considered as evidence of endangerment. *In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

The Department provided evidence of the mother's two convictions for possession and delivery of cocaine in 2007 and 2010, respectively, and a conviction for prostitution in 2006. Even though the mother's offenses occurred before the children were born, they may still be considered as part of a voluntary, deliberate, and conscious course of conduct that had the effect of endangering the children. *See In re R.W.*, 129 S.W.3d at 738; *see also In re C.A.B.,* 289 S.W.3d at 885 (holding prior convictions for possession of illegal drugs and a positive drug test established clear and convincing proof of a voluntary, deliberate, and conscious course of conduct that endangered the child's well-being). Evidence of improved conduct, especially of short duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices. *In re J.O.A.*, 283 S.W.3d at 346. In addition, conduct that subjects a child to the probability that the child will be left alone because a parent is jailed endangers both the physical and emotional well-being of the child. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).

The caseworker testified that appellant's positive drug tests and criminal history demonstrate that appellant has endangered the physical and emotional development of the children and termination is in their best interest. A representative of Child Advocates, Inc., also recommended termination based upon the parents' lack of stability and their continued positive drug tests.

In an attempt to explain her drug use, appellant contends that she did not know she was pregnant until she went into labor before D.D.R., Jr.'s birth. Appellant also asserts that the older child was with the maternal grandmother

9

during that time. There is evidence in the record that the older child had been living in the maternal grandmother's home until she was removed from the grandmother's care. Appellant had provided her mother's name as a relative to be considered for placement, in accordance with the requirements of her service plan. The Department caseworker testified that appellant's mother had an "extensive CPS history" and she was ruled out as a placement option. The parents agreed on a voluntary placement of the older child with a paternal aunt, but they soon removed the child and took her back to the maternal grandmother's home. The Department alleged that the child was placed at risk for abuse and neglect when the parents violated the safety plan. Appellant denied that her mother had a history with the Department.

After reviewing all of the evidence in the light most favorable to the trial court's finding that appellant engaged in a continuing course of conduct that endangered the well-being of the children, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that its finding is true. *See In re J.F.C.*, 96 S.W.3d at 266. The factfinder is the sole arbiter of the witnesses' credibility and the weight to give their testimony. *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)). We conclude that the disputed evidence, such as appellant's denial of drug use despite positive drug tests, is not so significant that a reasonable factfinder could not have resolved the disputed evidence to form a firm belief or conviction in favor of the finding of endangering conduct. *See In re C.J.S.*, 383 S.W.3d at 690; *In re C.A.B.*, 289 S.W.3d at 885.

After applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's finding that appellant engaged in conduct under subsection (E) that endangered the physical

and emotional well-being of her children. *See* Tex. Fam. Code § 161.001(1)(E); *In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 26.

## B. FAILURE TO COMPLY WITH SERVICE PLAN

To terminate parental rights based on Section 161.001(1)(O), a trial court must find by clear and convincing evidence that the parent:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Fam. Code § 161.001(1)(O).

Appellant's court-ordered family service plan required her to: acquire and maintain appropriate housing; participate and complete parenting classes; attend all court hearings and meetings with the agency; complete a psychological evaluation and/or psycho-social assessment and follow all recommendations; maintain stable, legal employment and provide proof in the form of a paycheck stub to the caseworker monthly; submit to random urinalysis drug testing which must be negative at all times; refrain from engaging in any criminal activities; comply with the Department and attend all court hearings, visitations, and appointments with the caseworker; cooperate with the Department by providing information on the father and his relatives; complete an alcohol/substance abuse assessment and follow all of the assessment's recommendations; attend NA/AA [Narcotics Anonymous/Alcoholics Anonymous] meetings at least two days per week and provide the name of the group and obtain signatures from verified sponsors; provide child support while her children are in the Department's care; complete 90 days inpatient drug treatment; and maintain contact with her children during one

hour visits two times a month at the CPS office.

There is no dispute that, at the time of trial, the children had been in the temporary managing conservatorship of the Department for more than nine months as a result of their removal, as required in subsection 161.001(1)(O). *See In re C.M.C.*, 273 S.W.3d 862, 874 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The record also demonstrates that the children were removed due to abuse or neglect. *See In re E.C.R.,* 402 S.W.3d 239, 248 (Tex. 2013) (considering the Department's affidavit and trial court's findings in support of removal of children). In support of her contention that the evidence is insufficient to support a finding under subsection (O), appellant cites *In re S.A.P.,* 169 S.W.3d 685, 705-06 (Tex. App.—Waco 2005, no pet.), to argue that the Department failed to prove the children were removed due to abuse or neglect. This reliance is misplaced.

In considering the termination of parental rights based on a failure by the parent to comply with provisions of a court order necessary for the return of a child pursuant to subsection 161.001(1)(O), the Texas Supreme Court has construed the words "abuse" and "neglect" broadly to include the risks or threats of the environment in which the child is placed. *In re E.C.R.*, 402 S.W.3d at 248. The court determined the trial court must find that the child has been removed as a result of actual or threatened abuse or neglect, which includes consideration of the child's environment and the harm suffered or the danger faced by other children under mother's care. *Id.* at 245–49. The court abrogated *In re S.A.P.,* cited by appellant, and the line of cases holding that parental rights could not be terminated under subsection (O) where a child was removed due only to the risk of abuse based on the parents' prior history. The supreme court held that the affidavit and subsequent finding by the trial court authorizing the child's removal were sufficient evidence to establish, as a matter of law, that the child had been removed

12

for abuse or neglect. *Id.* at 249. The court found the evidence in the affidavit and the trial court's findings authorizing removal sufficient to support the finding that the child had been removed for abuse of neglect, even where the allegations in the affidavit involved the abuse of a sibling. *Id.* at 248.

The case worker's affidavit filed with the Department's petition in this case stated appellant tested positive for cocaine and marijuana at D.D.R., Jr.'s birth and the baby had cocaine in his urine. According to the affidavit, the Department received a previous referral alleging neglectful supervision of the older child in 2011. According to the referral, both parents were using crack cocaine, and they left the child in the care of a 13-year-old cousin for three days. The child was dirty and had severe diaper rash. After appellant tested negative for drugs, the case ultimately was not pursued. The later allegations of neglectful supervision refer to the parents' placement of the older child with the maternal grandmother, who was rejected for placement by the Department because of her history with CPS. We conclude that the affidavit, together with the trial court's findings in its temporary order removing the children from appellant's care, are sufficient to support a finding of abuse or neglect as to both children based on the risk posed by their environment. *See In re E.C.R.,* 402 S.W.3d at 248–49.

Having determined that the Department's affidavit, followed by the trial court's order for removal, are sufficient evidence of that the children were removed as a result of actual or threatened abuse or neglect, we now review the evidence produced at trial to demonstrate that appellant has not complied with several components of her service plan. The Department's caseworker testified that the mother had only recently begun to comply with her service plan and she had not completed the court-ordered services. Although the mother completed her required parenting class and underwent a psychological assessment, she did not follow the

recommendations in the assessment, including that she complete her inpatient therapy through the court-ordered substance abuse program. Appellant checked herself out of the hospital against medical advice after fewer than thirty days. The Department's caseworker acknowledged that the mother is making progress with her out-patient therapy, but she "still has a ways to go." Appellant's drug tests were negative for the three months immediately preceding trial.

A social worker from the facility where appellant had treatment for her drug problem also testified. He acknowledged that appellant had left inpatient treatment after only twenty-three days, against medical advice, in October 2012. The social worker also testified that appellant began outpatient treatment three months before trial. She attended the "vast majority" of the out-patient classes and appears to have made progress.

The Department's caseworker testified appellant failed to provide any information to the Department about her employment. Both parents were on social security disability, but appellant worked at times. The caseworker testified that each parent receives $710 per month in disability payments, but neither parent pays child support. Although appellant does not provide financial support for the children, she helps supply diapers, clothing, and milk for the children.

Appellant failed to comply with the service plan's requirement to maintain regular visits with the children. In January of 2013, the parents' visits to the children were stopped for three months because they were verbally abusive to the caseworker and foster parents. The parents repeatedly expressed hostility to the caseworker. The case worker testified the older child was upset by these visits.

Appellant testified at trial and conceded that she did not complete the family service plan ordered by the court. She acknowledged that she did not complete her inpatient therapy. Appellant was pregnant again at the time of trial. She claimed

14

that the failure to complete the plan's requirements was due to complications from this subsequent pregnancy. Appellant testified that she has been undergoing weekly testing due to her pregnancy, and the time required to travel for testing and treatment has interfered with completion of her services. The statute's requirement for compliance with the court-ordered service plan does not make a provision for excuses, however. *See In re C.M.C.*, 273 S.W.3d at 875. In addition, the Department's caseworker testified appellant had not informed the Department of any complications from the latest pregnancy.

Appellant argues that she substantially complied with the service plan. Texas courts, including this court, have held that substantial compliance is not enough to avoid a termination finding under section 161.001(O). *See In re T.T.*, 228 S.W.3d 312, 319 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (noting Texas courts have uniformly found substantial compliance with the provisions of a court order are inadequate to avoid termination finding under subsection (O)).

After reviewing the evidence under the appropriate standards, we conclude the evidence is legally and factually sufficient to support a finding that appellant failed to comply with the provisions of the court order establishing the actions necessary for her to obtain the return of the children, as set out in subsection 161.001(1)(O).

## C. BEST INTEREST

There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent, and the burden is on the Department to rebut that presumption. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interest of the child. *Id.* In reviewing the

15

sufficiency of the evidence to support the second prong, a court examines several factors, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all nine factors to support a finding terminating a parent's rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533. With these considerations in mind, we review the evidence below.

The children were very young at the time of trial; they were two and a half years old and one year old. Thus, there was no evidence of the desires of the children. Testimony revealed that the older child lived with her grandmother at times and with her great aunt at other times before she was placed in foster care. There was no evidence that the older child lived with appellant before this proceeding was initiated. The younger child was removed from his parents' care at birth. There was almost no evidence of any attachment with the children, other than testimony that the children seemed glad to see the parents when they visited.

The record contains evidence that appellant is not able to provide for the present and future physical and emotional needs of her children and she continues to pose a present and future emotional and physical danger to the children due to her instability and drug use. The evidence of endangering conduct recited above is probative in determining the best interest of the children. *See In re D.R.A.*, 374

16

S.W.3d at 533. In reviewing a parent's ability to satisfy her children's present and future emotional and physical needs, we note that the need for permanence is a paramount consideration. *Id.* at 532–33. There is no evidence that appellant can provide a stable home or has stable employment. Appellant has at least three convictions for drugs and prostitution and has spent time in jail. Appellant has not completed her court-ordered service plan for reunification with her children. Appellant did not always cooperate with the Department, and her visitation was temporarily suspended because of her disruptive and argumentative attitude, which upset the older child.

The caseworker testified that the children are doing very well in their current placement and have adapted to that environment. The caseworker stated that the children did not have any special needs and their placement was meeting all of their physical and emotional needs. The ad litem agreed. The ad litem had evaluated the foster parent's home and was of the opinion that the foster parents are "capable of providing a stable, loving and suitable home for these kids going forward." The children are placed together, and the foster parents plan to adopt them.

In sum, considering the relevant factors under the appropriate standards of review, we hold that the evidence that was presented at trial and is summarized above is legally and factually sufficient to reasonably establish a firm belief or conviction that termination of appellant's parental rights is in the children's best interest. *See* Tex. Fam. Code § 106.001(2); *Holley*, 544 S.W.2d at 371–72; *see also In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of the child.").

Having found that the evidence is legally and factually sufficient to support a finding of at least one subsection of section 161.001(1) and that termination is in the best interest of the children pursuant to section 161.001(2), we overrule appellant's first issue.

### III. INEFFECTIVE ASSISTANCE

The statutory right to counsel for indigent persons in parental-rights termination cases in Texas embodies the right to effective counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). We apply the well-established *Strickland* test in parental-rights termination proceedings. *Id.* at 545 (citing *Strickland v. Washington* 466 U.S. 668, 104 S.Ct. 205 (1984)). Under *Strickland,* to establish an ineffective assistance claim, an appellant must show the following:

> First, the [appellant] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the [appellant] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [appellant] of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. In other words, a parent must show that counsel's performance was deficient and that this deficient performance prejudiced the parent's case. *In re M.S.,* 115 S.W.3d at 545.

To determine whether representation was deficient, we must consider all circumstances surrounding the case and determine whether counsel was "reasonably effective." *Id.* In doing so, we afford great deference to counsel's performance, indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Only if counsel's conduct is "so outrageous that no competent attorney would have engaged in it" will we find such performance deficient. *Id.*

18

In conducting the harm analysis under the second prong of *Strickland*, reviewing courts must determine whether there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Id.* at 550. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Thus, the parent must also show that "counsel's deficient performance prejudiced the defense." *In re J.O.A.*, 283 S.W.3d at 344 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

Appellant alleges that her appointed trial counsel was ineffective because she failed to object properly to leading questions posed to the Department's witnesses, file answers and/or counter-petitions, and properly and/or adequately prepare appellant for trial. Appellant also complains that counsel failed to engage in discovery, which she claims would have helped her prepare her case. Appellant has not cited any authority that these alleged deficiencies amount to ineffective assistance of counsel.[4]

Moreover, appellant makes only general allegations. Appellant did not identify the questions that she claims required objections. Appellant has not alleged what claim or claims should have been asserted in a counter-petition. Contrary to appellant's allegation, the record reflects that appellant's appointed counsel filed an answer on appellant's behalf. Appellant also has not explained what type of information she would have sought to obtain through discovery. The record reflects that appellant's counsel appeared at the regular status hearings and

_____

[4] In support of her ineffective assistance claim, appellant cited *Valencia v. Texas Department of Family & Protective Services,* No. 01-08-00345-CV, 2010 WL 1240988 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010), withdrawn and superseded by *In re V.V.*, 349 S.W.3d 548 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). In *In re V.V.,* the court of appeals rejected an ineffective assistance claim, finding that the father made no attempt to demonstrate that counsel's inadequacy caused the trial court to make the wrong decision. *Id.* at 559–61.

had access to the information available to the Department.

Our review of the record reflects that appellant's counsel made numerous objections and actively participated at trial. She cross-examined the Department's caseworker, who conceded that appellant had completed some of her required services, including completing her parenting class. On cross-examination, the caseworker acknowledged that appellant was doing very well in her out-patient treatment and was making progress addressing her substance abuse issues. The caseworker conceded that appellant's criminal convictions occurred before the children were born. Appellant's counsel also cross-examined the ad litem, who conceded that the children were happy to see the parents during their visits. Appellant's counsel also elicited testimony from appellant that attempted to explain the positive drug tests. Counsel filed a timely motion for new trial and a timely notice of appeal.

An allegation of ineffective assistance in a termination proceeding must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness and the resulting harm. *Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 622–23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Ineffective assistance of counsel was not raised in appellant's motion for new trial, and she failed to produce any evidence to support her claim. We may not speculate to find trial counsel ineffective when the record is silent regarding counsel's reasons for her actions. *Id.* at 623. Appellant's allegations do not rise to the level of "outrageous" conduct. Moreover, the record simply does not affirmatively show a reasonable probability that, but for the conduct of appellant's counsel, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. We overrule appellant's second issue.

# IV. CONCLUSION

Having overruled appellant's issues, we order the judgment of the trial court affirmed.

/s/  Martha Hill Jamison
    Justice

Panel consists of Chief Justice Frost and Justices Boyce and Jamison.