In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00395-CV**
_____

**IN THE INTEREST OF A.H.**

**On Appeal from the 1st District Court**
**Newton County, Texas**
**Trial Cause No. 13368**

**MEMORANDUM OPINION**

In this appeal, S.P. challenges the legal and factual sufficiency of the evidence supporting the trial court's findings that statutory grounds for termination exist and that termination is in the best interest of her daughter, A.H. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (N), (O), (2) (West 2014). We affirm the trial court's judgment.

Legal and Factual Sufficiency

"The decision to terminate parental rights must be supported by clear and convincing evidence." *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Clear and convincing evidence is "the measure or degree of proof that will produce in the

1

mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014). A judgment will be affirmed if a parent committed one or more predicate acts or omissions and termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001 (West 2014); *see also J.L.*, 163 S.W.3d at 84.

In reviewing the evidence for legal sufficiency, we consider all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *J.L.*, 163 S.W.3d at 84–85. We assume the factfinder resolved any disputed facts in favor of its finding, if a reasonable factfinder could do so, and "disregard all evidence that a "reasonable factfinder could have disbelieved[.]" *Id.* at 85 (quoting *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

When we review a termination of parental rights for factual sufficiency, we give "due consideration" to any evidence that the factfinder could reasonably have found to be clear and convincing. *J.F.C.*, 96 S.W.3d at 266; *see also In the Interest of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *J.F.C.*, 96 S.W.3d at 266. The evidence is factually

insufficient if the disputed evidence that does not reasonably support the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction that the fact at issue was true. *Id.*

Factual Background

The trial court found that S.P. (1) knowingly placed or knowingly allowed A.H. to remain in conditions or surroundings which endanger her physical or emotional well-being; (2) engaged in conduct or knowingly placed A.H. with persons who engaged in conduct which endangers the child's physical or emotional well-being; (3) constructively abandoned A.H., who had been in temporary managing conservatorship of the Department for not less than six months, and (i) the Department made reasonable efforts to return A.H. to S.P., (ii) S.P. has not regularly visited A.H., and (iii) S.P. has demonstrated an inability to provide the child with a safe environment; and (4) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain return of the child in Department care for not less than nine months as a result of a removal for abuse or neglect. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (N), (O).

S.P. testified that she started smoking marijuana at the age of nine and using methamphetamines at age 13. At age 31, S.P had been addicted to methamphetamine for over half of her life. S.P. described being high each morning

3

as part of her daily routine before her incarceration. S.P. used drugs "off and on" throughout her life, including during her pregnancies, and at least one of her daughters was born with drugs in her system.[1] S.P. admitted she was around her children while she was high on methamphetamine and that was a dangerous situation for the children to be in. S.P. said she "spiraled down" after the Department removed A.H., because addiction is "hard to overcome."

The affidavit for removal that was filed with the Department's original petition states that the Department received two intakes for neglectful supervision of three children, including six-month-old A.H. First, S.P. and A.H. were reportedly living in a van with a leaking roof. A.H. was dirty and had a terrible diaper rash. Second, the two older children reportedly found syringes and pills while visiting with their mother, and observed S.P.'s boyfriend injecting himself with a syringe in his neck. S.P. failed a drug test the following day, and the children were voluntarily placed with relatives or family friends. S.P. went to a rehabilitation facility called Franklin House for treatment, but she left the facility and the Department filed for removal on May 8, 2012.

---

[1]Two older children were given other placements and were not the subject of the case now on appeal. S.P. gave birth to a fourth child after CPS began its investigation into the neglect of A.H. S.P. used methamphetamines during the pregnancy. The same foster family was caring for both of S.P.'s younger children.

4

The Department obtained temporary managing conservatorship of A.H. and established a family service plan for S.P. The family service plan required that S.P. visit A.H. She was allowed two visits each month, but she had to provide a negative drug screen before the visit could occur. Over a nine-month period, S.P. accomplished three scheduled visits and one unscheduled visit after a court hearing on October 24, 2012. The family service plan required random drug screens, but S.P. failed to comply with that requirement.

The Department required confirmation of scheduled visits twenty-four hours before each visit, and the family service plan required that S.P. maintain safe, clean, and appropriate housing. The foster care worker never performed the necessary home visit because S.P. failed to provide an accurate residence address. S.P. lived with at least two different men and in at least four different towns while A.H. was in the Department's care.

As a result of a positive drug screen, S.P. re-entered rehabilitation at Franklin House on January 4, 2013. A subsequent indictment accused S.P. of delivering a controlled substance to a minor on November 23, 2012. S.P. resolved the criminal case through a plea bargain agreement for deferred adjudication with a ten-year period of community supervision. S.P. left Franklin House because she was transported to court for a hearing on the criminal case and subsequently

confined in a substance abuse felony punishment facility as a condition of community supervision. On the date of the termination hearing, S.P. would have to remain in the SAFP facility another few months, then go to a halfway house. She completed a parenting class while in the SAFP facility. The foster care worker testified that the child could not be returned to her mother in the SAFP facility and making the Department A.H.'s permanent managing conservator would not obtain permanency for the child.

S.P. had been in the SAFP facility approximately four months at time of the hearing. She completed a six-week, eight-session parenting course. S.P. stated that she would be released from SAFP in one and one half months, and she hoped that she would be placed in a Beaumont halfway house. Once established in a halfway house, a friend would help her get a job working at the Vidor restaurant where her friend's mother is the manager. S.P. would possibly be released from the halfway house after three months.

S.P. testified that she performs community service in the community under supervision by a squad boss and that she attends church regularly. She realizes that when she is doing drugs she is not being a good mother. After her release to the halfway house S.P. intends to live with a family friend she considers to be her "mamaw." Then she will move away from the area, perhaps to Nacogdoches where

she hoped a friend could get her a job at the chicken plant. S.P. admitted that she did nothing to obtain a home for her family prior to her incarceration and that "[t]here's nothing I can do until I'm released."

The CASA representative, Cecelia Dixon, visited A.H. at her foster parents' home at least once each month beginning in August 2012. Dixon stated that A.H. is "really doing well" with her foster family and that termination of the existing parent-child relationship and adoption by the foster family would be in the child's best interest. She admitted that she has not visited S.P. during the time S.P. has been in jail and in a SAFP facility.

## Ground for Termination

In her first issue, S.P. contends the trial court's findings, including the finding regarding subsection (O), are not supported by clear and convincing evidence. S.P. acknowledges that A.H. was removed as a result of S.P.'s drug addiction, but she contends the initial allegations of neglect were unsubstantiated. Establishing grounds for termination under subsection (O) requires removal under chapter 262 of the Texas Family Code for abuse or neglect, but "those words are used broadly." *In the Interest of E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013).

> Consistent with chapter 262's removal standards, "abuse or neglect of the child" necessarily includes the risks or threats of the environment in which the child is placed. Part of that calculus includes the harm suffered or the danger faced by other children under the parent's care.

7

> If a parent has neglected, sexually abused, or otherwise endangered her child's physical health or safety, such that initial and continued removal are appropriate, the child has been "remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child."

*Id.* (citation omitted). The Department removed A.H. because she was reported to be living in a van with a leaking roof and her siblings were exposed to drug use by S.P. and her boyfriend. The Department determined that it was necessary to obtain temporary managing conservatorship over A.H. after S.P., an admitted long-time drug addict, left the rehabilitation facility and then refused to return. S.P. claimed she was not using drugs, but she failed a drug test on the day of the removal. During the termination hearing, S.P. admitted she was using drugs before and after the Department took temporary custody of A.H. The trial court could reasonably find that the Department removed A.H. from S.P. for the abuse or neglect of A.H. *See id.*

The trial court also considered evidence that supports a finding that S.P. failed to comply with the court order. S.P. continued to abuse methamphetamines after the Department established a family service plan and while S.P. was pregnant with another child. She failed to pass drug screens and did not attend scheduled visits with her child. S.P. failed to obtain appropriate housing and admitted she could not assume custody of A.H. on the date of the termination hearing.

8

S.P. admits that she did not begin work on her parenting plan right away, but argues that the evidence that she failed to complete the court-ordered actions necessary to obtain the return of A.H. is factually insufficient because by the date of the termination hearing, she had completed the parenting course and had been "drug free" for almost seven months. Evidence that S.P. was not abusing drugs while she was confined in a SAFP facility and that she expected to temporarily reside with a family friend after her eventual release from the facility is not so significant that the trial court could not form a firm conviction or belief that S.P. failed to visit A.H., failed to obtain and maintain appropriate housing, and failed to complete drug treatment before the date of the termination hearing. We conclude the evidence supporting a termination finding under subsection (O) is both legally and factually sufficient.

The judgment will be affirmed if clear and convincing evidence supports a single termination finding and the trial court's finding that termination is in the best interest of the child. *See J.L.*, 163 S.W.3d at 84. We note that S.P. admitted (1) she used drugs while she was pregnant, (2) she was around her children while she was high on methamphetamine, and (3) it was dangerous for her children to be with her while she was high. The evidence that weighs against a finding of endangerment consists of S.P.'s testimony that, although she used drugs while her

9

children were in her care, they never saw her use drugs. The factfinder could consider the children's exposure to their mother's drug use to be endangering, and S.P. admitted her children saw her when she was high, even if they did not watch her injecting methamphetamine. The evidence that weighs against the finding is not so significant that the trial court could not have reasonably formed a firm belief or conviction that S.P.'s drug use endangered A.H. *See* Tex. Fam. Code Ann. § 161.001(1)(E). We overrule issue one.

## Best Interest

Regarding the child's best interest, we consider a non-exhaustive list of factors: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individual seeking custody; (5) programs available to assist this individual to promote the best interest of the child; (6) plans for the child by this individual or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code. Ann. § 263.307(b) (West 2014).

S.P. argues that the Department provided little information about A.H.'s living conditions before her removal to foster care, and other than testimony concerning S.P.'s drug addiction provided little information about S.P.'s behavior at that time. Because her drug addiction provides the Department's evidence concerning her parenting abilities, she contends the evidence that termination would be in A.H.'s best interest is insufficient in light of the evidence of her recovery from addiction.

S.P. failed in her first attempt to attain and maintain sobriety through a rehabilitation facility's program. A factfinder may infer from past relapses that similar conduct will recur if the child is returned to the parent. *See In the Interest of I.C.W.*, No. 02-12-00226-CV, 2013 WL 173746, at *13 (Tex. App.—Fort Worth Jan. 17, 2013, no pet.) (mem. op.). S.P. had achieved sobriety only while incarcerated, and none of the evidence in the record required the factfinder to conclude that S.P. has the skills to permanently maintain her recovery after her release from confinement. "[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *In the Interest of J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (analyzing evidence of endangerment under subsection 161.001(1)(E)).

S.P.'s current incarceration prevented her from assuming the care of A.H. S.P. expected to obtain employment in a restaurant during her residence in a halfway house, but had no assurance that she would be housed in a local halfway house; she did not have a firm offer of employment; and she provided no evidence to corroborate her claim that her friend could get her a job. S.P. hoped to obtain long-term employment through a friend, but she admitted her plan "has not been set into motion yet." "[A] parent without stability, income, or a home is unable to provide for a child's physical and emotional needs." *In the Interest of M.C.H.*, No. 14-12-00103-CV, 2012 WL 1795123, at *4 (Tex. App.—Houston [14th Dist.] May 17, 2012, no pet.) (mem. op.).

The Department's plan for A.H. was for her adoption by the foster family that has cared for A.H. since she was sixth months old. At the time of trial, A.H. was almost two years old and knew no parents other than her foster parents. The CASA representative had met with the foster family monthly, and she testified that the foster family was meeting A.H.'s emotional and physical needs. The foster family was also caring for A.H.'s younger sister, who was eight months old at the time of the termination hearing.

As the sole finder of fact, the trial court could reasonably form a firm conviction or belief that (1) S.P. lacked the ability to provide stability for A.H., (2)

12

the Department had found a permanent home for A.H. where her emotional and physical needs would be met, and (3) termination would be in the child's best interest. The evidence of S.P.'s successful recovery while confined in the SAFP facility and her testimony concerning her plans for the future weigh against termination, but in light of the entire record, including the evidence of S.P.'s past conduct and the lack of certainty in her future plans, that evidence is not so significant that a reasonable factfinder could not reasonably have formed a firm belief that termination of S.P.'s parental rights is in A.H.'s best interest. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on March 18, 2014
Opinion Delivered April 10, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.