# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00168-CV

**G. N. E.-A., a/k/a G. N. E., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-FM-13-001449, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a jury trial, the trial court rendered judgment terminating G.N.E.'s parental rights to her fifth child, T.R.D. The jury found that G.N.E. had engaged in conduct that endangered T.R.D.'s physical or emotional well-being and failed to comply with the provisions of a court order that specifically established the actions necessary for G.N.E. to have T.R.D. returned to her. *See* Tex. Fam. Code § 161.001(1)(E), (O). The jury also found that termination of G.N.E.'s parental rights was in T.R.D.'s best interest. *See id.* § 161.001(2). G.N.E. appealed the trial court's order terminating her parental rights, challenging the legal sufficiency of the evidence supporting the jury's findings regarding the grounds for termination, contending that the termination of her parental rights was done in violation of her constitutional right to due process, and asserting that because there was no valid reason for termination, it could not have been in T.R.D.'s best interest to terminate G.N.E.'s parental rights. We will affirm.

**BACKGROUND**

The Texas Department of Family and Protective Services (the Department) filed a petition seeking to terminate G.N.E.'s parental rights to her child, T.R.D. The case was tried to a jury. We will discuss the factual background in more detail in our discussion of G.N.E.'s appellate complaints. At the conclusion of the trial, the jury found two predicate grounds for terminating G.N.E.'s parental rights to T.R.D. and that termination was in the child's best interest. The trial court rendered judgment on the jury's verdict and terminated G.N.E.'s parental rights to T.R.D. This appeal followed.

**DISCUSSION**

Numerous witnesses testified over the course of the four-day trial regarding whether there were sufficient grounds to terminate G.N.E.'s parental rights. In her first issue, G.N.E. challenges the legal sufficiency of the evidence supporting the jury's findings that there were grounds for termination. Rather than summarize the entirety of the lengthy testimony presented at trial, we begin by reviewing the sufficiency of the evidence supporting the jury's finding that G.N.E. failed to comply with a court order establishing actions necessary for reunification. *See id.* § 161.001(1)(O).

Family Code section 161.001(1)(O) provides:

The court may order termination of the parent-child relationship in a suit filed by [the Department] if the court finds by clear and convincing evidence:

(1) that the parent has:

. . . .

2

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of [the Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* In an appeal from the termination of parental rights, a legal-sufficiency challenge requires a heightened standard of review. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the finding to determine whether a trier of fact could reasonably have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266. We do not, however, disregard undisputed evidence that does not support the finding. *In re J.F.C.*, 96 S.W.3d at 266.

The Department was first named T.R.D.'s temporary managing conservator on March 15, 2013, after she was removed from G.N.E.'s care based on the court's finding that the Department had the authority to take possession of T.R.D. pursuant to Family Code chapter 262 for abuse or neglect. At the time of trial, T.R.D. had been in the temporary conservatorship of the Department for more than nine months as required by section 161.001(1)(O). On May 14, 2013, the court ordered G.N.E. to do the following things in order to achieve reunification with T.R.D.:

- participate in and successfully complete individual therapy with Robert Gallegos and follow all recommendations;

- participate in and complete a drug and alcohol assessment and follow all recommendations;

- participate in any random drug screens within 24 hours of the request;

3

- participate in and complete a protective parenting class;

- maintain stable housing and employment and provide proof of each;

- participate in a psychiatric evaluation with Hill Country Counseling and follow all recommendations of the provider; and

- participate in a psychological evaluation with a provider identified with the Department and follow all recommendations.

In November 2013 the court modified its order to provide that the individual therapy be done with a provider approved by the Department rather than with Robert Gallegos.

At trial G.N.E. testified that she had completed a drug and alcohol assessment and followed the recommendations and had also completed protective parenting class in January 2014. She stated that she may have missed some of the requested random drug screens. G.N.E. testified that she had been living with her girlfriend and another friend for the past five or six months, but refused to provide the address where she was living or the name of the person who leased or owned the property. G.N.E. testified that she could not tell the Department or the jury where she lived because the friend said that "if she did she would have to get kicked out." G.N.E. testified that if T.R.D. were returned to her, they would occupy one of the two rooms at the undisclosed location along with G.N.E.'s girlfriend and the girlfriend's two children. G.N.E. stated that she did not believe that stable housing was necessary to be a good mother. G.N.E. testified that during the month before trial she had been working five or six hours per week at Girling Home Health Care and was paid $7.75 per hour. G.N.E. stated that she worked at Walmart for a month in March 2013 and had also worked for a week during the holiday shopping season in November 2013 through a temporary agency. G.N.E. testified that she underwent a psychological evaluation in

4

September 2013 but admitted that she had not completed individual therapy or a psychiatric evaluation. She stated that although she had attended some counseling sessions in February 2013 with Robert Gallegos, a licensed professional counselor, she stopped seeing him when the rights to her fourth child were terminated in June of that year. G.N.E. agreed that she had voluntarily stopped seeing Gallegos even though she could have continued with that therapy and even though there was an open case regarding T.R.D. in which she had been ordered to participate in individual therapy.

Gallegos testified that he began therapy sessions with G.N.E. in February 2013 as part of services ordered for G.N.E. to achieve reunification with her fourth child. Gallegos testified that at that time, G.N.E. did not seem to understand the connection between trauma she had endured as a child and her current decision-making. Gallegos stated that G.N.E. missed several meetings in April 2013 when, after he had agreed to go to her home for the sessions, she was not there when he arrived. Gallegos testified that in May 2013 G.N.E. told him she no longer wanted to continue therapy. Gallegos believed that at that time she was engaged in counterproductive behavior and was moving toward being a non-protective parent. Gallegos testified that G.N.E. needed to continue therapy in order to correct the issues that were preventing her from being a protective parent. Gallegos stated that in January 2014 G.N.E. asked if she could return to counseling with him, but he did not have any openings then and so put her on a waiting list. Gallegos reiterated that without therapy he believed G.N.E. was at risk of revictimization, substance abuse, and domestic violence.

Nicole Richardson, a licensed professional counselor, testified that G.N.E. was referred to her for individual therapy in September 2013. She began working with G.N.E. on October 3 of that year. Richardson testified that G.N.E. stated during their first visit that she did not

5

want to participate in therapy and did not understand why she had been referred to Richardson or why the Department was involved in her life. Richardson described G.N.E. as unwilling to communicate with her. G.N.E. was thirty-five minutes late to her second appointment, appeared upset, and reported that she was late because she had gotten into a fight with her girlfriend. During the third session, G.N.E. was resistant to discussing her past, which Richardson believed was crucial to her therapy. G.N.E. stated that she had been through counseling before and did not believe she had anything she needed to work on and did not need further counseling. G.N.E. skipped the fourth session and did not return Richardson's call. Richardson testified that G.N.E. finally communicated to Richardson that she did not need counseling and did not have time to come in for further sessions. Richardson did not see G.N.E. after October 31, 2013. Richardson testified that G.N.E. needed further counseling to address her anger issues in order to effectively parent a young child. Richardson stated that she would be concerned about G.N.E.'s ability to parent if she did not receive further counseling.

David Dubin, a psychologist, testified that G.N.E. was referred to him for an evaluation in September 2013. Dubin testified that G.N.E. exhibited severe signs of anxiety and some signs of depression. Dubin believed that it would be difficult for G.N.E. to parent and act in a supervisory capacity because she was not able to care for herself and therefore would not be able to care for a child. Dubin expressed concern that G.N.E.'s apprehension, variable moods, and unpredictable anger could cause her to get into fights around a child and that her erratic emotions would make it difficult for her to do everyday tasks. Dubin testified that G.N.E. needs individual

6

therapy in order to achieve the emotional stability necessary to reliably and consistently care for a child.

Patricia Gibbs, the Department caseworker assigned to G.N.E., testified that G.N.E. failed to complete individual therapy, one of the most important of the recommended services and one that it was universally agreed she needed in order to be a protective parent. Gibbs also expressed grave concern about the fact that G.N.E. would not disclose where she was living. She testified that typically, before the Department returns a child to a parent, a Department caseworker goes to the place the child will be living to ensure that it is a safe environment. Gibbs further testified that at a January 2014 hearing before the February trial date, G.N.E. requested another referral for individual therapy. Gibbs was unable to locate a therapist who had appointments available before the trial date.

On appeal G.N.E. contends that the requirements to terminate her parental rights pursuant to section 161.001(1)(O) were not met because T.R.D. was removed from her care a few days after she was born due to concerns about G.N.E.'s drug use and the fact that the Department had an open case regarding her fourth child. G.N.E. maintains that removal for these reasons does not satisfy the statute's requirement that T.R.D. was removed for abuse or neglect. We disagree. The evidence presented in this case shows that T.R.D. was removed due to concerns about her safety if permitted to remain with G.N.E. There was evidence that G.N.E. had smoked marijuana while pregnant with T.R.D. and had an extensive history of remaining in relationships involving severe domestic violence, including the relationship with D.S., the father of her second, third, and fourth children. There was testimony about numerous physical altercations between the two, including an

7

incident in which D.S. beat G.N.E. so severely that she had a miscarriage. The evidence also shows that G.N.E. continued to have contact with D.S. after the relationship ended and had also remained in contact with a former girlfriend who had previously punched her in the face and strangled her to the point that she became unconscious. Jacob Huereca, a social worker who worked with G.N.E. for nine months in 2012, testified that G.N.E. did not believe that she had mental-health issues or needed medication. He testified that G.N.E. tended to minimize her history of domestic violence and had a pattern of depending on others, which put her at risk of being a victim of domestic violence, which, in turn, would endanger a child in her care. Gibbs testified that at the time T.R.D. was born, G.N.E. had not participated in the services ordered for reunification with her fourth child. She had not gone through substance-abuse treatment and had not participated in individual therapy.

The supreme court has rejected the contention that section 161.001(1)(O) requires a showing of actual abuse and neglect of the child removed from the parent. *See In re E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013). Although it determined that "subsection (O) requires proof of abuse or neglect," the court held that, considering the use and meaning of those terms in the context of the Family Code, "abuse or neglect" in subsection O can be read to include "risk." *Id.* The court held that subsection O's requirement that removal be due to abuse or neglect is met when, although there was no actual abuse or neglect of the child at issue, there was evidence of an immediate danger to the child's physical health or safety, a need to protect the child, and a substantial risk of continuing danger if the child were returned home. *Id.* The evidence presented in this case showed that T.R.D. was removed due to safety concerns and the substantial risk and continuing danger that would have

8

resulted if T.R.D. had been allowed to remain with G.N.E. We conclude that the Department met its burden to show that T.R.D. was removed due to abuse or neglect as the jury found.

Viewing the evidence in the required light for a legal-sufficiency challenge, we conclude that a reasonable jury could have formed a firm conviction or belief that G.N.E. failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of T.R.D., who had been removed from her care due to abuse or neglect. *See* Tex. Fam. Code § 161.001(1)(O). Because it is only necessary that we determine that the evidence was legally sufficient as to one predicate act under section 161.001(1), we need not address the sufficiency of the evidence relating to section 161.001(1)(E). We overrule G.N.E.'s first appellate issue.

In her second issue, G.N.E. asserts that termination pursuant to section 161.001(1)(O) is a violation of her constitutional right to due process because the Department actively prevented her from completing some of the court-ordered services. First, G.N.E. claims that the Department prevented her from doing individual therapy. The evidence does not support this claim. Rather, the evidence shows that G.N.E. engaged in individual therapy with Gallegos from February 2013 through May 2013, at which time she told him she no longer wanted to continue therapy. In October 2013 the Department referred her to Richardson. Richardson testified that G.N.E. expressed her view that she did not need individual therapy and did not have time to attend. Although G.N.E. asserts that she was unable to attend that therapy because she was also ordered to attend a substance-abuse program, Richardson testified that she would have accommodated G.N.E.'s schedule, including seeing her on the weekend or in the evening. We do not agree that, as G.N.E.

9

argues, she was effectively forced to choose between individual therapy and the substance-abuse program. With regard to G.N.E.'s assertion that she was prevented from getting a court-ordered psychiatric evaluation because the order stated that it be done by Hill Country Counseling Center and the Department's contract with that entity ended in November 2013, we observe that G.N.E. did not attempt to schedule the evaluation at any time during the more than five months that elapsed between the order to do so and November 2013. Nor did G.N.E. request that the Department identify an alternative to Hill Country Counseling Center. The evidence does not support G.N.E.'s contention that the Department prevented her from completing these court-ordered services aimed at addressing what each mental-healthcare provider agreed was critical to G.N.E.'s being able to successfully parent T.R.D. We overrule the second issue.

In her third issue, G.N.E. asserts that her "rights should not have been terminated because there should not be a finding of best interest where the evidence is legally insufficient and there has been a fundamental violation of [G.N.E.'s] right to due process." We have concluded, however, that the evidence was legally sufficient to support termination based on section 161.001(1)(O) and that G.N.E.'s due process rights were not violated. We overrule the third issue.

## CONCLUSION

Having overruled each of G.N.E.'s appellate issues, we affirm the trial court's judgment terminating her parental rights as to T.R.D.

10

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   July 29, 2014