

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-22-00350-CV
_____

**IN THE INTEREST OF J.A., E.A., H.L., S.L., AND S.L., CHILDREN**

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 29,372, Honorable Dan Mike Bird, Presiding

May 8, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellants, "Robert" and "Karen," appeal from the trial court's judgment terminating their parental rights.[1]  Appellee is the Texas Department of Family and Protective Services.  On appeal, both Appellants challenge whether termination was proper under TEX. FAM. CODE § 161.001(b)(1)(O) and is in the best interest of the children.  After reviewing the evidence, we affirm the judgment.

_____

[1] To protect their privacy, we will use pseudonyms to refer to the parents and children.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

**Background**

Robert and Karen are the parents of "Harriet" (6-year-old female), "Sabrina" (five-year-old female), and "Shari" (three-year-old female). Karen is also a parent to two older children—"Jack" (eleven-year-old male) and "Ellie" (nine-year-old female)— through a prior relationship with "Joe."[2] At the time of their removal by the Department, the five children resided with Robert and Karen.

In July 2021, the Department filed its original petition for termination of Robert's and Karen's parental rights to the children. The affidavit in support of emergency removal alleged physical neglect and concern about an unsafe and unsanitary living environment outside and inside their home. Lucy Hernandez, an agent for the Department, stated that when she arrived at the home, she observed the five children playing outside; the three youngest were completely naked. Inside, the children's residence contained a living room with an unsecured plywood floor. The plywood floor had holes large enough that Hernandez could see the ground underneath the trailer, where piles of trash lay.[3] A thirty-gallon trash bin, overflowing with garbage, sat in the middle of the living room; flies circled the debris. Hernandez observed days-old dog feces and urine, including dog feces on the living room couch and on laundry.

In the kitchen area, Hernandez observed piles of dirty dishes, leftover food, and trash, while "multiple [] flies swarmed around it." In Karen's bedroom was an uncovered fuse box accessible to the children; "wires were observed to be hanging out of the fuse

---

[2] Joe's parental rights to Jack and Ellie were also terminated, but he did not appeal from that order.

[3] Britney Williams testified at final hearing that stray animals sometimes entered the home through these holes.

box." Throughout the rest of the home, Hernandez observed more trash and pet waste, electrical wiring accessible in the children's room, stained mattresses on the floor, and a hole in a bedroom wall that was open to the outside.[4] Due to the unsanitary conditions in the home, the Department made the decision to conduct an emergency removal of the children.

In September 2021, an agreed Family Plan of Service Agreement was established and made an order of the trial court. The service plan conditioned the return of their children on, among other things:

(1) completing parenting classes and demonstrating learning;

(2) actively participating in individual counseling and following all recommendations;

(3) actively participating in family counseling and following all recommendations;

(4) providing and maintaining a safe, sanitary, and stable home for a minimum of six months to demonstrate stability;

(5) demonstrating and providing a stable and legal source of income allowing them to provide for the children on an on-going basis substantiated by pay stubs verifying employment or income; and

(6) completing all services and recommendations by 2INgage.[5]

---

[4] This was not the children's first encounter with the Department. Hernandez attested that Karen had agreed to work services and complete a family plan as early as 2018. However, in September 2019, conditions for the children deteriorated; they were found to be filthy, insect bitten, and covered in head lice and bed bugs. These conditions remained the same or worse in June 2020, followed by some improvement between August and September 2020. Even then, however, Ellie was observed with a grapefruit-sized bruise on her right thigh.

[5] 2INgage is a community service provider of services to meet the needs of children, youth, and families. The service provider is a state contractor providing case management and family services designed to achieve permanency in the home.

Following a permanency hearing in June 2022, Robert and Karen were also ordered by the trial court to complete psychological evaluations and to follow all recommendations, to complete parenting classes for large families, and to complete individual and family counseling.

At the final hearing, Britney Williams, the permanency case manager for Robert and Karen during the past eighteen months, testified about the parents' efforts to comply with the court's orders. A monitored return of the children to the residence was attempted in May 2022, but cut short because, in part, Sabrina complained Robert hit her in the head with a belt, causing a cut, bruising, and swelling. Robert and Karen denied the allegation, replying that Sabrina had fallen outdoors and struck a rock.

Moreover, Williams testified about the parents' requirements to provide and maintain a safe, sanitary, and stable home for a minimum of six months. The home's living conditions tended to temporarily improve as scheduled hearing dates neared, but quickly fell back into "disarray" in later days. Williams visited the residence in September and October 2022 between the dates of the permanency hearing and final hearing.[6] Outdoor photographs in September depicted broken windows, piles of old lumber, broken lumber planks, weeds several feet high, and abandoned equipment. Images inside the home revealed more filth: urine-stained carpets and floors, overflowing trash cans, pet waste throughout, and countertops piled high with dirty dishes. Portions of the ceiling had collapsed due to the elements and lack of maintenance. At least one open electrical

---

[6] Photographs of the residence during visits from May 11, 2022, through October 19 were admitted as the Department's Exhibit Six.

4

box remained. Williams observed a gasoline can inside the home and that some of the home's occupants smoke cigarettes.[7]

Williams also testified that neither Robert nor Karen completed all of their court-ordered services. She testified that Robert failed to complete individual counseling, parenting classes, and had not provided proof of a legal source of income for a six-month period. She testified that Karen failed to complete individual counseling, attendance at a women's group, and parent counseling. According to Williams, both Robert and Karen failed to provide and maintain a safe, sanitary, and stable home for a minimum of six months as required by the service plan.

At the conclusion of the hearing, the trial court terminated Robert's and Karen's parental rights. The court found that clear and convincing evidence supported the conclusion that Robert and Karen failed to comply with the court's orders necessary to obtain the return of their children. The trial court also found by clear and convincing evidence that termination of their parental rights was in the children's best interest. This appeal followed.

**Analysis**

The standards by which we assess the sufficiency of evidence is well-established and require no detailed elaboration here.[8] Under Subsection (O), "[t]he court may order

---

[7] During an October inspection, Williams observed that some conditions improved, as some rooms were tidier and had been swept. However, conditions had worsened in others: ceiling holes had enlarged, plasterboard on ceilings sagged, and insulation protruded from walls.

[8] When reviewing evidence for legal sufficiency, we look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so and

termination of the parent–child relationship if the court finds by clear and convincing evidence: [the parent] failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *In re A.L.R.*, 646 S.W.3d 833, 837 (Tex. 2022). Relying in large part on a decision by the Fourteenth Court of Appeals,[9] Robert and Karen assert that their "substantial" or "material" compliance with their service plans should be sufficient to avoid termination of their parental rights under section 161.001(b)(1)(O), and the best interest findings, and that the Court should order a new trial. We disagree.

***Subsection O***

Under this Court's jurisprudence, we "undertake a strict approach to subsection (O)'s application." *In re A.A.*, 635 S.W.3d 430, 441 (Tex. App.—Amarillo 2021, pet. granted); *In re J.C.*, No. 07-16-00024-CV, Tex. App. LEXIS 4726, at *2 (Tex. App.—Amarillo May 4, 2016, no pet.) (holding that subsection O "does not contemplate or permit a certain degree of non-compliance). The parent must comply with all of the court ordered provisions to avoid the application of § 161.001(b)(1)(O). Nor does the statute allow for excuses.") (citations omitted). "Substantial compliance is not the same as complete

---

disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible. If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient. *Id. See also In re E.C.R.*, 638 S.W.3d 755, 764 (Tex. App.—Amarillo 2021, pet. denied).

In a factual sufficiency review, we give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *E.C.R.*, 638 S.W.3d at 764. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

[9] *See In re A.J.A.R. and M.J.R.*, 631 S.W.3d 360 (Tex. App.—Houston [14th Dist.] July 24, 2020, pet. denied) (holding the evidence to be legally and factually sufficient to support the trial court's finding that appellant failed to comply with the terms of the family service plan adopted by the court).

6

compliance." *In re S.J.R.-Z*, 537 S.W.3d 677, 690 (Tex. App.—San Antonio 2017, pet. denied). In 2022, the Supreme Court held that notwithstanding a parent's completion of some service plan requirements, legally sufficient evidence supported upholding termination of parental rights pursuant to subsection O because the parent failed to complete one requirement (i.e., maintain a safe and stable home environment, which included providing safe home conditions). *In re J.W.*, 645 S.W.3d 726, 742 (Tex. 2022).

The evidence shows, and Robert and Karen concede, that the parents failed to meet all of the service plan's requirements. This is particularly true regarding the poor conditions of the home, which are similar to those found by the Supreme Court in *J.W.* to evidence a failure to maintain a safe and stable home environment. *Id.* at 736. We find that legally and factually sufficient evidence supports the trial court's finding under subsection O. Appellants' first issue is overruled.

***Best Interest of the Children***

Next, Robert and Karen challenge the sufficiency of the Department's evidence to prove that termination of parental rights is in the best interest of the children. To assess the trial court's best interest determination, we may consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[10] While the *Holley* list "is by no means exhaustive, [it] does indicate a number of considerations which either have been or would

---

[10] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

appear to be pertinent." *Holley*, 544 S.W.2d at 372. "The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2005). "Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest." *In re C.J.F.*, 134 S.W.3d 343, 354 (Tex. App.—Amarillo 2003, pet. denied).

Robert and Karen rely almost entirely on the completion of many service requirements and their "fundamental liberty interest in the companionship, care, custody, and management of [their] children." *In re E.C.R.*, 402 S.W.3d 239, 240 (Tex., 2013). While we do not doubt that Robert and Karen love their children, the conditions of their home remained unsafe and unsanitary throughout much of the proceedings. Neither parent presented a plan whereby they could take care of the needs of the children or provide a safe, sanitary, and stable household. Instead, the evidence presented at final hearing suggested that conditions at the residence may only temporarily improve.

Since their removal, the children have demonstrated significant improvement. Although adoption was not available for all the children, they are all experiencing a safe, sanitary, and stable living environment. Jack, for example, suffers from autism with behavioral issues. Before placement, he was easily distracted, quiet, and disengaged; his education suffered due to absences and tardiness. Since his placement, however, Jack is socializing better, and he is more verbal, well-liked, and cared for.

8

Since their placement, Ellie and Harriet have benefited from therapy, reducing their emotional outbursts and improving their efforts at self-regulation. Both children are being treated by speech therapists and improving their social skills at school and in church.

Sabrina's and Shari's foster parent testified that the girls were initially upset and suffered from self-inflicted injuries. Over time, there have been fewer instances of outbursts and self-injurious behavior; the two girls are improving social skills, attending church, and making friends. The foster parent plans to adopt the children.

We conclude that legally and factually sufficient evidence supports the finding that termination of Robert's and Karen's parental rights is in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). Robert's and Karen's second issue is overruled.

## Conclusion

Having overruled all issues on appeal, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice