**Opinion filed July 17, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00010-CV

_____

# IN THE INTEREST OF Z.A., A.A., AND R.L., CHILDREN

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV 16-09-346**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother of Z.A., A.A., and R.L. and also terminated the parental rights of the father of R.L.[1]  Both of these parents appeal.  On appeal, the mother presents two issues for review and the father presents four.  We affirm.

### I. *Issues Presented*

The mother asserts in her first issue that her constitutional rights were violated because she did not have the opportunity to complete her family service plan.  In her

_____

[1]We note that the father of Z.A. and A.A. is deceased and was not a party to the proceedings below. Therefore, for ease of reference, we refer to the father of R.L. as "the father" in this opinion.

second issue, she contends that she received ineffective assistance of counsel.  In all four of the father's issues, he challenges the legal and factual sufficiency of the evidence in support of the trial court's findings.

## II. *Termination Findings*

The termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017).  To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child.  *Id.*

In this case, the trial court found that the mother had committed four of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (P), and (Q).  Specifically, the trial court found that the mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, that the mother had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, that the mother had used a controlled substance in a manner that endangered the children and either failed to complete a substance abuse treatment program or abused drugs after completing such a program, and that the mother knowingly engaged in criminal conduct that resulted in her conviction and confinement and inability to care for the children for not less than two years from the date of filing the petition.

The trial court found that the father had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O).  Specifically, the trial court found that the father had knowingly placed or knowingly allowed his child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that the father had engaged in conduct or knowingly placed his child with persons who engaged in conduct that endangered the child's physical

or emotional well-being; and that the father had failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of both parents' parental rights would be in the best interest of the children.

### III. *Analysis of Mother's Issues*

In her first issue, the mother asserts that her rights to due process and equal protection were violated when the trial court terminated her parental rights without giving her an opportunity to complete her family service plan. The record reflects that, upon removal, the trial court ordered each parent to complete various services in order to obtain the return of the children. The mother, who had an extensive criminal history, did not complete her service plan because she was incarcerated.

The trial court did *not* find that the mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children. *See* FAM. § 161.001(b)(1)(O). Because the mother's parental rights were not terminated based upon her failure to complete her service plan, any failure on the part of the trial court to give the mother more time to complete her service plan was not a violation of the mother's rights to due process or equal protection. We overrule the mother's first issue.

In her second issue, the mother contends that she received ineffective assistance of counsel at trial because trial counsel (1) failed to properly prepare for trial, (2) compelled the mother—by duress and coercion—to waive her right to a jury, and (3) failed to assist her in working her service plan. We have reviewed the record and have found nothing therein to support the allegations made by the mother with respect to the conduct of trial counsel. First, nothing in the record indicates that

3

trial counsel was unprepared for trial. Second, the record reflects that, after a jury was selected, seated, and sworn, the mother voluntarily waived her right to a jury trial. Third, the mother testified that the reason she did not complete her service plan was that she was incarcerated while this case was pending.

A parent in a termination case has the right to "effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). To prevail on a claim of ineffective assistance of counsel, a parent must generally show (1) that trial counsel's performance was deficient and (2) that the deficient performance was so serious as to deny the parent a fair and reliable trial. *In re J.O.A.*, 283 S.W.3d 336, 341–42 (Tex. 2009) (following the two-pronged analysis of *Strickland v. Washington*, 466 U.S. 668 (1984)); *M.S.*, 115 S.W.3d at 545 (same). In the present case, the mother has failed to satisfy either prong of the *Strickland* test. Thus, we overrule her second issue on appeal.

IV. *Analysis of Father's Issues*

In four issues, the father challenges the legal and factual sufficiency of the evidence to support the trial court's findings. In his first and second issues, he appears to challenge the findings made by the trial court pursuant to subsections (D) and (E) of Section 161.001(b)(1). In the third issue, he challenges the finding made pursuant to subsection (O). In his final issue, he challenges the best interest finding.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record in this case reflects that the Department had been involved with both parents prior to the removal of the children in this cause. The mother had an extensive history that involved both drugs and crime. She testified that the father was aware that she was "a recovering addict," and the father testified that he knew the mother had a history of methamphetamine use. Despite the father's awareness that the mother continued to use drugs, he left R.L. with the mother and moved away when R.L. was an infant. The mother was pregnant again when the father moved out. The father testified that he had had no contact with R.L. from May, when the father moved out and left the mother, until September, when the father was notified that the mother was in the hospital. The mother abused methamphetamine while pregnant, and the couple's baby died at the hospital shortly after birth. An investigator for the Department went to the hospital "[b]ecause a baby had passed

away due to the mother's drug use." After the investigator arrived at the hospital, the father left with R.L. and immediately thereafter returned R.L. to the mother and the mother's grandmother.

The father testified that he initially worked his service plan in an attempt to get R.L. back and that he was doing well with visitation and his service plan until the "incident" with his girlfriend. The "incident" to which the father referred was a physical altercation that occurred while this parental termination case was pending. As a result of that incident, the father was arrested for assault family violence against his girlfriend.

The father only partially complied with the terms of his service plan. He began, but did not complete, individual counseling. He failed to maintain stable housing. And, while this case was pending, he tested positive for marihuana and engaged in domestic violence. At the time of the final hearing, the father testified that he was not yet ready to take custody of R.L.

We hold that the evidence at trial supported the trial court's finding under subsection (O). There was clear and convincing evidence that the father failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his child.

Furthermore, the record reflects that, at the time of the final hearing, R.L. had been in the Department's care for well over nine months and that he had been removed from the parents' care due to abuse or neglect. The Texas Supreme Court has held that the language "abuse or neglect of the child" as used in subsection (O) "necessarily includes the risks or threats of the environment in which the child is placed." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). In *E.C.R.*, the court determined that "placing the child's physical health or safety at substantial risk" is sufficient to support a finding of "abuse or neglect." *Id.* at 240. Evidence of the mother's use of methamphetamine—and the father's awareness of such drug use—

6

while R.L. was in the mother's care and while the mother was pregnant with another child constituted sufficient evidence from which the trial court could have determined by clear and convincing evidence that R.L. had been removed because of a substantial risk of abuse or neglect. We uphold the trial court's finding under subsection (O) and, therefore, need not address the father's first and second issues, which relate to the findings under subsections (D) and (E). *See* TEX. R. APP. P. 47.1. We overrule the father's third issue.

In the father's fourth issue, he challenges the legal and factual sufficiency of the evidence to support the trial court's best interest finding. Although the father did not want his parental rights to be terminated, the trial court found that R.L.'s best interest would be served by termination.

The record reflects that the father had a history of drug use, that he left R.L. with someone whom he knew used methamphetamine, that he did not have stable housing, and that he was not ready to take custody of R.L. at the time of the final hearing. The child's guardian ad litem and the Department's conservatorship caseworker both believed that termination of the father's parental rights would be in R.L.'s best interest.

The record also reflects that, at the time of the final hearing, R.L. was placed with his paternal grandmother and her husband in an appropriate home. They are protective of R.L., and they have been approved and certified to adopt the father's two children from a previous relationship. Based upon the evidence presented in this case, we defer to the trial court's findings. *See C.H.*, 89 S.W.3d at 27.

We hold that, based on the evidence presented at trial and the *Holley* factors, the trier of fact could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of his child. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the emotional and physical needs of R.L. now and in the future, the emotional and

7

physical danger to R.L. now and in the future, the parental abilities of the father, the plans for the child by the Department, the instability of the father's home, the father's use of drugs, and the stability of the child's placement, we hold that the evidence is sufficient to support the finding that termination of the father's parental rights is in the best interest of R.L. *See id.* We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. We overrule the father's fourth issue.

## V. *This Court's Ruling*

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


July 17, 2018

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[2]

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.