

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00297-CV

**IN THE INTEREST OF J.J.C.B.R.**, J.E.R., and J.J.D.R., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-01636
Honorable Genie Wright, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:         Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: September 18, 2019

AFFIRMED

This is an accelerated appeal from an order terminating appellant's parental rights to her children, J.J.C.B.R., J.E.R., and J.J.D.R.  The appellant ("Mother") challenges the sufficiency of the evidence in support of the trial court's finding that termination of her parental rights is in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).  We affirm.

## BACKGROUND

On July 25, 2018, the Texas Department of Family and Protective Services (the "Department") filed a petition to terminate appellant's parental rights.  The trial court held a bench trial on April 29, 2019.  At the time of trial, J.J.C.B.R. was three, J.E.R. was two, and J.J.D.R. was one.  Department investigator Jennifer Torres testified that, in July 2018, Mother was arrested at her apartment, and the Department was called to investigate neglectful supervision of the children.

Torres testified that the apartment had no air conditioning, the toilet was clogged with dirty diapers, and the "house was in disarray." Torres took photographs of the apartment, which were admitted into evidence. The photographs show a cluttered and unkempt apartment; one photograph shows dirty diapers piled on the bathroom floor. Torres testified that there was minimal food in the home, and the apartment was infested with roaches. She also testified that there was a fan in the living room that did not have a cover on it. According to Torres this presented a safety risk to the children. Torres stated that she had concerns about physical abuse of the children. The three-year-old had burns on the palm of his hand and the bottom of his feet; the two-year-old had self-bite marks on his body; and the one-year-old had scratches around his eye. The Department took custody of the children, and the children were treated at a hospital. Torres testified that Mother did not admit to causing the injuries, and Torres did not know how the injuries occurred.

The Department caseworker, Aukim Hubbard, testified that she was assigned to the case after the children's removal. Hubbard stated she spoke with Mother by phone. According to Hubbard, Mother did not offer any explanation for the children's injuries. Hubbard created a family service plan for Mother. The plan required Mother to, among other things, submit to a psychological evaluation and a drug assessment and follow all treatment recommendations. The plan also required Mother to complete parenting classes, to maintain safe, stable housing, and to hold a job. The court ordered Mother's compliance with the plan earlier in the case. Hubbard testified that she went over the plan with Mother by phone. According to Hubbard, Mother had not completed any of the specified services, and Mother's explanation for not starting services was that she was in an abusive relationship and was using methamphetamines. Hubbard testified that Mother partially engaged with the plan by attending a drug assessment, but Mother never followed up with drug treatment. According to Hubbard, Mother did not visit her children after their removal because the court did not allow visitation. Hubbard also testified that Mother had a charge

for injuries to the children pending against her, and that Mother was recently arrested for failure to identify. In addition, Hubbard testified that Mother had assaulted her own mother (the children's grandmother), and the grandmother was hospitalized at the time the children were removed from Mother's home. According to Hubbard, the children were living with foster parents at the time of trial. Hubbard testified that it was believed the oldest child was on the autism spectrum, and that he was receiving services. Hubbard asserted the foster parents were able to meet the children's needs and were willing to adopt. Mother did not appear at trial.

After hearing the evidence, the trial court terminated Mother's parental rights to the children, concluding there was clear and convincing evidence that Mother: (1) engaged in conduct or knowingly placed the children in conditions or surroundings which endangered their physical and emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical and emotional well-being; (3) constructively abandoned the children; and (4) failed to comply with the provisions of a court order specifically establishing the actions necessary for appellant to obtain the return of her children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O). The trial court also found that termination was in the best interest of the children. *Id.* § 161.001(b)(2). Mother timely appealed.

## STANDARD OF REVIEW

A parent-child relationship may be terminated only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in section 161.001(b)(1) of the Family Code and that termination is in a child's best interest. *Id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002).

**BEST INTEREST**

In her sole issue, appellant challenges the sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in her children's best interest. There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See id.* § 263.307(b).

Our best-interest analysis is guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in the child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The focus of our review is whether the evidence, as a whole, is sufficient for the trial court to have formed a

strong conviction or belief that termination of the parent-child relationship is in the best interest of the child. *Id.*

At trial, there was evidence that Mother had failed to provide her children with a safe, stable home. The Department removed the children for medical treatment for burns, bites, and scratches, and the Department's investigator testified to the danger an uncovered fan posed to the children. Indeed, Mother did not challenge the predicate findings that she engaged in conduct or placed the children with persons or in conditions that endangered the children's physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E); *In re C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest). The Department became involved with the children when Mother was being arrested, and the caseworker testified Mother had recently been arrested for failure to identify. *See In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("When [a parent] . . . repeatedly commit[s] criminal acts that subject them to the possibility of incarceration, that can negatively impact a child's living environment and emotional well-being."); *see also In re X.J.L.*, No. 04-17-00466-CV, 2017 WL 4655102, at *3 (Tex. App.—San Antonio Oct. 18, 2017, no pet.) (mem. op.) (stating a parent's inability to maintain a lifestyle free of criminal activity is relevant to a best-interest determination because it subjects the child to instability and endangers their physical and emotional well-being). The caseworker also testified that Mother had physically assaulted the children's grandmother and a charge for endangerment to the children was pending against Mother. According to the caseworker, Mother stated she was in an abusive relationship and was using methamphetamines. *See In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at *5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.) ("Continued illegal drug use [by the parent] . . . is conduct that jeopardizes parental rights and may be considered as

establishing an endangering course of conduct, and that termination is in the best interest of the child.").

In addition, the record shows the children lived in an unsanitary environment. Dirty diapers clogged the toilet in Mother's apartment and were piled on the bathroom floor. *See In re C.F.N.*, No. 04-15-00458-CV, 2015 WL 6507516, at \*3 (Tex. App.—San Antonio Oct. 28, 2015, no pet.) (mem. op.) (relying on evidence that the mother "lived in filthy, deplorable conditions with her daughter" in affirming the trial court's finding that termination was in the daughter's best-interest). Mother did not complete her parenting classes or any other court-ordered services. *See In re S.B.*, 207 S.W.3d 877, 888 (Tex. App.—Fort Worth 2006, no pet.) (holding a parent's drug use, inability to provide a stable home, and failure to comply with a service plan supports a finding that termination is in the best interest of the child). The caseworker testified that the foster parents were able to meet the children's needs and were willing to adopt. *See In re G.V.*, No. 14-02-00604-CV, 2003 WL 21230176, at \*5 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (noting the stability a proposed placement promises "weigh[s] heavily in the court's finding that termination is in the best interest" of the child).

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination is in the children's best interest.

## CONCLUSION

The trial court's order of termination is affirmed.

Rebeca C. Martinez, Justice