

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00345-CV

**IN THE INTEREST OF S.M.P.M.** and N.J.M., Jr., Children

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00964
Honorable Richard Garcia, Judge Presiding[1]

Opinion by:    Beth Watkins, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Beth Watkins, Justice

Delivered and Filed: November 13, 2019

AFFIRMED

Appellant S.C. appeals the trial court's order terminating her parental rights to her children, S.M.P.M. and N.J.M., Jr. On appeal, S.C. contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in her children's best interests. We affirm the trial court's order of termination.

### BACKGROUND

S.C. gave birth to N.J.M., Jr. on April 30, 2018. The next day, Edward Gentry, a caseworker with the Texas Department of Family and Protective Services ("the Department"), went to the hospital to see N.J.M., Jr. after receiving a report that N.J.M., Jr. displayed symptoms of drug exposure. When asked about her own positive drug test, S.C. denied using drugs during

---

[1] The Honorable Genie Wright signed the order that is the subject of the appeal.

her pregnancy but told Gentry that cocaine was in her system because she had recently touched it. Gentry attempted to place N.J.M., Jr. and S.C.'s one-year-old daughter, S.M.P.M., with family, but none of S.C.'s family members could care for the children. The Department filed a petition to terminate S.C.'s parental rights and placed S.M.P.M. with a foster family. After his release from the hospital, the Department placed N.J.M., Jr. with the same foster family.

The Department created a family service plan for S.C. During the pendency of this case, S.C. was twice arrested for possession of a controlled substance. Due to concerns regarding S.C.'s drug use, the Department pursued termination of S.C.'s parental rights.

The trial court held a one-day bench trial at which S.C. appeared from prison by video conference. The trial court heard testimony from two Department caseworkers, the foster mother, and S.C. The trial court terminated S.C.'s parental rights, and this appeal followed.

## ANALYSIS

### *Standard of Review*

To terminate parental rights under section 161.001 of the Texas Family Code ("the Code"), the Department bears the burden to prove by clear and convincing evidence one of the predicate grounds in subsection 161.001(b)(1) and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007. Courts require this heightened standard of review because termination of a parent's rights to a child results in permanent and severe changes for both the parent and child, implicating due process concerns. *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied).

When reviewing the legal and factual sufficiency of the evidence, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department produced clear and convincing evidence, a legal sufficiency review requires us to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

A factual sufficiency review requires us to also consider the disputed evidence. *In re J.F.C.*, 96 S.W.3d at 266. We must consider whether disputed evidence is such that a reasonable fact finder could have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that the fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* Under both standards, the trial court is the sole judge of the weight and credibility of the evidence. *In re E.X.G.*, No. 04-18-00659-CV, 2018 WL 6516057, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet denied) (mem. op.).

### *Applicable Law*

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of

the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* These factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Courts should also consider the factors outlined in section 263.307 of the Code regarding whether a parent is willing and able to provide a child with a safe environment. *See* TEX. FAM. CODE ANN. § 263.307. This is because promptly placing a child in a safe environment is presumed to be in a child's best interest. *Id.* Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *The Evidence*

With these standards and factors in mind, we consider the evidence admitted at trial as it relates to the children's best interests. Here, the Department produced evidence that it removed the children from S.C.'s care when S.M.P.M. was one year old and N.J.M., Jr. was a newborn after it received a referral that N.J.M., Jr. was going through drug withdrawal. Gentry testified he saw N.J.M., Jr. "shaking uncontrollably" in the neonatal intensive care unit, and believed S.C. had exposed N.J.M., Jr. to drugs during her pregnancy. Gentry testified that S.C. denied using drugs during her pregnancy but told him she had cocaine in her system because she had touched it. Because he was concerned S.C. used drugs during her pregnancy, he believed he needed to remove the children from S.C.'s care.

Another caseworker, Armandina Ruiz, testified the Department had serious concerns about S.C.'s drug usage. Ruiz testified she prepared a family service plan for S.C., requiring S.C. to

complete, inter alia, a drug and alcohol assessment and any additional services recommended as a result of that assessment. Lifetime Recovery, the service provider that performed the drug and alcohol assessment, recommended inpatient drug treatment. Ruiz testified she discussed the plan with S.C. and told S.C. noncompliance could lead to termination of her parental rights. She stated she arranged for S.C. to enter inpatient drug treatment on December 6, 2018 and relayed that arrangement to S.C., but S.C. did not complete inpatient drug treatment.

Ruiz further testified that during the pendency of this case, S.C. was arrested three times—once for theft and twice for possession of a controlled substance. The trial court admitted copies of the information and indictments associated with those arrests. At the time of trial, S.C. was incarcerated because she pled no contest to a charge of possession of a controlled substance in an amount less than one gram. The record reflects S.C.'s release date remained pending because the court was waiting for a Treatment Alternative to Incarceration Program evaluation to determine whether she could receive inpatient or outpatient drug treatment.

Ruiz also testified that before S.C.'s incarceration, S.C. missed several of the supervised visits with her children the Department had scheduled. Ruiz monitored each of the approximately six visitations S.C. attended during the eleven months this case was pending. According to Ruiz, although S.C. attempted to engage with the children, the children did not appear bonded with their mother. Ruiz added that some of these visits lasted less than the scheduled hour because S.C. often arrived late.

When asked about the children's current placement, Ruiz testified the children were currently living in a safe and stable environment. She stated that when the Department placed S.M.P.M. in her initial foster home, she was found to have suffered a fractured skull. She explained that it was unclear whether S.M.P.M. suffered the injury in that home or while in S.C.'s care; nevertheless, the Department placed S.M.P.M. in a second home, where N.J.M., Jr. later

joined her. According to Ruiz, N.J.M., Jr. had to stay in the hospital for more than a month while he was being weaned off the morphine treatment he received as a result of the drug exposure. She testified that both children were doing well in their current placement.

The trial court also heard testimony from the children's foster mother. The foster mother testified she and her husband hoped to adopt both children. Since living in this home, S.M.P.M. has grown into a very happy child. The foster mother described S.M.P.M. as smart and added she is learning her ABCs and how to count. She indicated that when N.J.M., Jr. initially arrived at her home, he was suffering from withdrawals, constantly trembling and crying. At that time, N.J.M., Jr. was receiving phenobarbital to treat his withdrawal symptoms. Since then, he has grown into a healthy baby who is growing fast. The foster mother stated she and her husband care for the children very much and are able to meet their needs.

Finally, the trial court heard testimony from S.C., who testified that the Department removed the children from her care after N.J.M., Jr. was born showing symptoms of drug withdrawal. S.C. stated she took a drug test and was told she tested positive for cocaine. She added, however, that she did not use any illegal drugs during her pregnancy but probably tested positive because she may have touched cocaine and "it had got through my pores somehow." She stated that she was undergoing methadone treatment at a local clinic at that time. When asked about her family service plan, S.C. stated Ruiz set up multiple appointments to begin inpatient treatment, but either she or Ruiz would reschedule. S.C. testified that although she never received inpatient drug treatment, before her incarceration, she participated in an outpatient treatment program, took parenting classes, and attended Narcotics Anonymous meetings.

S.C. testified she pled no contest to a possession of a controlled substance charge, and was waiting to learn whether she could receive inpatient or intensive outpatient treatment. She admitted that during the pendency of this case, she used and sold methamphetamine. She

explained that she continued using drugs because she did not know how to handle the removal of her children or the news that her daughter had suffered a skull fracture.

When asked about her long-term plan for the children, S.C. stated she planned to stay at Haven for Hope, which would provide a room for her and her children. She stated that she planned to continue work on her service plan at Haven for Hope and in three months, be referred to an apartment. To support herself, she planned to work and put her children in daycare. With respect to the missed visitations, S.C. testified she left messages with Ruiz when she was either unable to make the appointment or running late due to the bus schedule. S.C. stated she believed she was bonded to her children. She explained that she played with her children during her visits and described S.M.P.M. as "very attached" to her.

During S.C.'s testimony, the trial court also heard evidence that S.C. had a total of seven children—two of which are the subject of this appeal. S.C. testified that one of her children had passed away and the Department had removed the other four children from her care. The Department produced copies of the orders of termination regarding those children, which the trial court admitted into evidence. A review of those orders reflects that the trial court terminated S.C.'s parental rights to three of her children in 2016 because S.C. continued to use a controlled substance and failed to complete court-ordered substance abuse treatment. The trial court terminated S.C.'s parental rights to her fourth child that same year due to abandonment.

Based on this evidence, the trial court could have reasonably determined the Department produced clear and convincing evidence that termination of S.C.'s parental rights to both S.M.P.M. and N.J.M., Jr. was in the children's best interests. Here, the Department produced evidence that S.C. exposed N.J.M., Jr. to cocaine during her pregnancy, and as a result, N.J.M., Jr. suffered pain and required hospitalization and drugs to treat his withdrawal symptoms in the first few months of his life. The Department also produced evidence that S.C. did not complete her family service

plan—specifically an inpatient treatment program. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (evidence that the appellant failed to comply with the court-ordered service plan supported the trial court's best-interest determination); *see also In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *9 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) (failure to complete family service plan and pattern of arrests is relevant to best interests determination). And because of her continued illegal drug use, S.C. was incarcerated and unable to provide for the emotional and physical needs of her children at the time of trial. *See In re J.G.S.*, 550 S.W.3d 698, 706 (Tex. App.—El Paso 2018, no pet.) ("A parent's incarceration is relevant to his ability to meet the child's present and future physical and emotional needs."). Additionally, the trial court could consider evidence regarding terminations of S.C.'s parental rights to her other four children in making its best interests determination. *See In re E.C.R.*, 402 S.W.3d at 248. With respect to the children's current placement, the Department produced evidence establishing the children are healthy and living in a safe and stable home with a family who can provide for their physical and emotional needs and intends to adopt them.

Accordingly, after evaluating the evidence and testimony in light of the *Holley* factors and viewing the evidence in the light most favorable to the trial court's finding, we conclude the evidence is legally sufficient to support the trial court's finding that termination of S.C.'s parental rights is in the children's best interests. *See In re J.L.*, 163 S.W.3d at 85. With regard to factual sufficiency, in considering the entire record, including the disputed evidence—primarily S.C.'s testimony that she did not use drugs during her pregnancy—we further conclude the evidence is factually sufficient to support the trial court's best interests finding. *See In re J.F.C.*, 96 S.W.3d at 266. We therefore hold the evidence is both legally and factually sufficient.

## CONCLUSION

We affirm the trial court's order terminating S.C.'s parental rights to her children, S.M.P.M. and N.J.M., Jr.

Beth Watkins, Justice